**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| COMMONWEALTH OF VIRGINIA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 20-242 (RC) |
| | : | | |
| v. | : | Re Document No.: | 10 |
| | : | | |
| DAVID S. FERRIERO, *in his official capacity as Archivist of the United States*, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING MOVANTS' MOTION TO INTERVENE**

**I. INTRODUCTION**

In this case, a group of plaintiff states contend that a long-pending constitutional amendment has been ratified by the required number of states and is now part of the Constitution. They have sued the Archivist of the United States, seeking a declaration that the amendment is now the law, as well as an order directing the Archivist to carry out his statutory duty to publish and certify an approved amendment. Another group of states, contending that the proposed amendment has not been validly approved, moves to intervene in the suit on behalf of the Archivist. For the reasons explained below, the Court will grant the motion to intervene.

**II. BACKGROUND[1]**

On January 27, 2020, the legislature of the Commonwealth of Virginia voted to ratify the Equal Rights Amendment (ERA), a proposed constitutional amendment declaring that the

---

[1] The Court's summary and choice of language here should not be read as implying any view on the current status of the ERA. "For purposes of resolving the motion[] to intervene presently before the Court, the well-pleaded allegations in the Complaint are assumed to be true." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (citations omitted); *see*

equality of rights under the law should not be denied or abridged by the United States or by any state on account of sex. *See* Compl. ¶¶ 27, 52, ECF No. 1.  By its reckoning, Virginia's vote made it the thirty-eighth state to ratify the amendment, meaning that the ERA had been approved by three-quarters of the states (as required for an amendment under Article V of the Constitution) and that it is now the Twenty-Eighth Amendment to the Constitution of the United States. *Id.* ¶¶ 54–55.  Despite Virginia's vote, the Archivist of the United States declined to publish or certify the ERA, as he is arguably required to do under statute. *Id.* ¶¶ 58 (citing 1 U.S.C. § 106b), 62. Virginia, along with Nevada and Illinois (the two other states to have most recently voted to ratify the amendment), subsequently brought this suit against the Archivist.

Before the Archivist filed an appearance, another group of states (Alabama, Louisiana, Nebraska, South Dakota, and Tennessee) moved to intervene in this case as Defendants, both as a matter of right and as a matter of this Court's permissive discretion.  *See* Mot. to Intervene, ECF No. 10.  These Movants contend that the ERA was not properly ratified by the plaintiff states and reject the idea that it is now part of the Constitution.  *Id.* at 3.  Their basic arguments are: (1) a Congressionally-imposed deadline for ratification of the ERA is valid and has long-since passed; (2) the Constitution itself implicitly limits the time available for state ratification, and that tacit deadline has also passed; and (3) five states (including Movants Nebraska, South Dakota, and Tennessee) that originally ratified the ERA have since rescinded their ratifications, meaning that the ERA still lacks the required support.  *Id.* at 3–5.  Plaintiffs, it should be noted, anticipated each of these defenses and offered preemptive counter-arguments in their complaint. Compl. ¶¶ 63–74.  The Archivist does not oppose Movants' intervention, but Plaintiffs do.  *See*

---

*also Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("[M]otions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention.").

Pls.' Mem. in Opp'n to Mot. to Intervene ("Pls.' Opp'n"), ECF No. 21.  The motion is fully briefed and ripe for the Court's consideration.  Since the completion of briefing, the Archivist has appeared in the case and filed a motion to dismiss.  Mot. to Dismiss, ECF No. 29.

### III.  LEGAL STANDARD

Under the federal rules, an outside party can intervene in an existing lawsuit under certain circumstances.  *See* Fed. R. Civ. P. 24 (providing for both "intervention of right" and "permissive intervention").  A court must allow an applicant to intervene when, (1) "[o]n timely motion," it (2) "claims an interest relating to the property or transaction that is the subject of the action" and (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," (4) "unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a); *see also Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (summarizing Rule 24(a) as requiring "four elements—timeliness, interest, impairment of interest, and adequacy of representation").  Alternatively, a court may allow an applicant to intervene when it demonstrates (1) again, "on timely motion" that it (2) "has a claim or defense that share with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  When exercising its discretion to allow permissive intervention, the Court also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Whether under Rule 24(a) or 24(b), "where a party tries to intervene as another defendant," our Circuit has also "required it to demonstrate Article III standing."  *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

## IV.  ANALYSIS

### A.  The Movants Are Entitled to Intervene as a Matter of Right

As explained below, the Court agrees with Movants that they meet each of the requirements of Rule 24(a) and have demonstrated standing, at least at this preliminary stage. Because the Court finds that intervention as a matter of right is therefore appropriate, it does not discuss whether Movants are also entitled to permissive intervention under Rule 24(b).

#### 1.  Timeliness

This element merits little discussion.  Movants moved to intervene approximately three weeks after the complaint was filed and prior to any meaningful developments in the case (indeed, before the Archivist had even entered an appearance).  Such a prompt motion is timely under any reasonable measure, and Plaintiffs make no argument to the contrary.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 734–35 (D.C. Cir. 2003) (finding it "not difficult at all" to find timely a motion to intervene filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer").

#### 2.  Interest and Impairment of Interest

Of the five Movants, two (Alabama and Louisiana) never ratified the ERA, while three (Nebraska, South Dakota, and Tennessee) first ratified it but have since purported to rescind their ratifications.  Mot. to Intervene at 2.  Despite this difference, all five Movants claim a "legally protected interest in this action." *Id.* at 7 (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)).  They portray the issue as one of fairness: "If Plaintiffs have standing to ensure their 'yes' votes are counted and the ERA is added to the Constitution, then Movants have standing to ensure their 'no' votes are counted and the ERA is not added to the Constitution." *Id.* at 8.  They submit that each "State has an interest in securing observance of the terms under which it

participates in the federal system," including the rules governing the amendment process. *Id.* (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607–08 (1982)). More concretely, they argue that the Archivist's publication of the ERA will require them to review their existing laws for compliance with the new amendment and will expose those laws to potential legal challenges. *Id.* at 9–10. Finally, Movants claim, the three rescinding states have an additional interest in their prior ratifications not being incorrectly construed and wrongly treated as "live legal documents" by the Archivist. *Id.* at 8–9.

For their part, Plaintiffs seem to concede that the states that purported to rescind their ratifications of the ERA have a sufficient interest in the lawsuit. But they claim that Louisiana and Alabama—the two Movants who undisputedly never ratified the ERA—"cannot identify a legally protected interest threatened by the discrete procedural questions before the Court in *this* action." Pls.' Opp'n at 8. Because there is no risk that their vote will be miscounted, Plaintiffs maintain, they "do not have an interest in this litigation beyond a generalized disdain for the Equal Rights Amendment." Pls.' Opp'n at 3–4. Plaintiffs argue that any concerns about how the ERA will be interpreted and enforced are speculative and not relevant to this proceeding. *See id.* at 9 (noting that how the ratified ERA "will interact with the 50 states' laws, regulations, and programs" is not at issue in this case).

Plaintiffs are correct to point out this case is not directly related to the content and potential impact of the amendment. But the Court is not convinced that this provides grounds to exclude Louisiana and Alabama. There is, as Plaintiffs implicitly acknowledge, at least some uncertainty about the impact of a ratified ERA on current constitutional doctrine.[2] At a

---

[2] *See* Lisa Baldez et al., Does the U.S. Constitution Need an Equal Rights Amendment?, 35 J. Legal Stud. 243, 244–45 (2006) (describing a debate in which some "argue that ratification of the ERA will clarify a particularly murky area of the law and, in the process, generate a nearly

5

minimum, all five Movants—and indeed all 50 states—will be operating under a binding but novel regime if the Archivist confirms and publishes the amendment. All states face a form of threatened "injury": they will have to review their laws, consider whether they comply with the amendment, and decide whether to maintain certain policies and programs in the face of new litigation risks. Additionally, and perhaps more importantly, all states would seem to have a more general procedural interest in participating in the federal system under a validly adopted (or rejected) superior rule.

    The overall interest analysis becomes slightly more complicated, however, when viewed through the lens of Article III's standing requirements, as our Circuit has held it must. *See Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 794 (2019) (explaining that Rule 24(a)'s "legally protected interest" must be "sufficient to confer Article III standing"); *see also Crossroads Grassroots Policy Strategies*, 788 F.3d at 316 ("The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability."). The Movants do not analyze their interests in these exact terms, seeming instead to rely on older Circuit precedent that spoke somewhat less precisely about the relationship between Rule 24(a) and Article III standing. *See* Mot. to Intervene at 7 ("Any movant 'who satisfies Rule 24(a) will also meet Article III's standing requirement.'") (quoting *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)).[3] And for their part, Plaintiffs do not broadly challenge Movants' standing, possibly because they do not want to argue themselves out of court.

---

irreversible sea change in sex discrimination jurisprudence" while others "remain doubtful that the amendment could produce any effect," in part "because decisions of the U.S. Supreme Court have largely fulfilled the amendment's chief objectives").

    [3] *Cf. Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) ("In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally

Ultimately, in this preliminary posture (and aware that it lacks fully adversarial briefing on the issue), the Court concludes that all five Movants have identified a legally protected interest "sufficient to confer Article III standing." *Old Dominion Elec. Coop.*, 892 F.3d at 1233, All five Movants have a constitutionally-assigned role in the amendment process. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) ("Various textual provisions of the Constitution [including Art. V] assume the States' continued existence and active participation in the fundamental processes of governance."). And all five have a related interest in their regulatory powers not being constrained or preempted by a procedurally invalid constitutional rule. *See Snapp*, 458 U.S. at 601 (identifying as a sovereign interest "the power to create and enforce a legal code, both civil and criminal"); *Maine v. Taylor*, 477 U.S. 131, 137 (1986) (stating, in recognizing standing, that "a State clearly has a legitimate interest in the continued enforceability of its own statutes"); *cf.* S*tate of Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 444 (D.C. Cir. 1989) (explaining that when the "preemptive effect [of federal law] is the injury of which petitioners complain, we are satisfied that the States meet the standing requirements of Article III"). At the same time, the Court is mindful that the Archivist has offered a standing argument in support of his motion to dismiss. *See* Mem. in Supp. of Mot. to Dismiss at 8–11, ECF No. 29-1. By recognizing Movants' interests here, the Court does not mean to prejudge the issue of Plaintiffs' standing and related justiciability questions—it simply seeks to facilitate the efficient presentation of arguments from apparently concerned parties. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) ("[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.").

---

speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*.").

Building on this analysis, it is not difficult to conclude that Movants' interests will be impaired if Plaintiffs are successful in this case. Movants' regulatory and procedural interests would be affected if the Archivist were ordered to publish the amendment. And it is unclear whether Movants would be able to bring a subsequent lawsuit to "un-publish" or "de-ratify" the amendment. *See United States v. Stahl*, 792 F.2d 1438, 1439 (9th Cir. 1986) (indicating that "certification of the adoption of [a constitutional amendment by the statutorily-designated federal official] is conclusive upon the courts") (citing *Leser v. Garnett*, 258 U.S. 130, 137 (1922)). In any case, "[r]egardless of whether the [Movants] could reverse an unfavorable ruling by bringing a separate lawsuit, there is no question that the task of reestablishing the status quo if the [Plaintiffs] succeed[] in this case will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735.

### 3.  Adequacy of Representation

In their motion, Movants argued that the Archivist, as a representative of the federal government, would not necessarily adequately defend their state-specific interests. *See* Mot. to Intervene at 13 ("As a federal official, the Archivist has no interest in the validity of Movants' laws or what happens to their ratification documents."). Movants predicted that the Archivist would not raise all of their anticipated defenses and reasoned that "[b]ecause his only interest is following the procedures imposed on him by federal law, the Archivist 'merely seeks to defend the present suit and would accept a procedural victory.'" *Id.* (quoting *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016)). In opposing, Plaintiffs primarily argued that, prior to the Archivist actually appearing in the case, it was impossible to know whether or not he would not adequately represent Movants' interests. *See* Pls.' Opp'n at 5

("Movants' speculation about the positions the Archivist might take is simply insufficient to support intervention as of right.").

Regardless of its merits, the parties' debate has been overtaken by events. As mentioned above, the Archivist has since appeared and filed a motion to dismiss, and his arguments appear to vindicate some of Movants' concerns. He does appear to be content with a "procedural victory," insofar as he raises a variety of justiciability concerns, and he does not raise all of Defendants' proposed defenses. *See generally* Mem. in Supp. of Def.'s Mot. to Dismiss. More generally, this Circuit has "often concluded that [federal] governmental entities do not adequately represent the interests of aspiring intervenors" because the federal government's obligation "is to represent the interests of the American people" as expressed in federal law, not the interests of other entities or governments. *Fund for Animals*, 322 F.3d at 736; *see also WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017) ("While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens."); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (reasoning that "the existing defendants, the DOI and the Secretary, have no clear interest in protecting Alaska's sovereignty or Alaska's interest"). Additionally, our Circuit has noted that an applicant's burden in this context is minimal, requiring it to show a mere possibility that its interests may not be adequately represented absent intervention. *See Fund for Animals*, 322 F.3d at 735. Here, it is not difficult to see that the interests of Movants and the federal government "might diverge during the course of the litigation," *id.* at 736, particularly since the federal government "remains free to change its strategy" as the case proceeds, *100Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 280 (D.D.C. 2014).

## V.  CONCLUSION

For the foregoing reasons, Movants' motion to intervene is **GRANTED**.  Consistent with their motion, Movants shall "voice their collective views in one consolidated brief . . . [and] focus their briefs and arguments on their own unique defenses, rather than duplicating defenses and arguments that the Archivist raise[d] himself."  Mot. to Intervene at 15.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 12, 2020                                                                        RUDOLPH CONTRERAS
                                                                                                                    United States District Judge