**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VIRGINIA, ILLINOIS, and NEVADA,
*Plaintiffs*,

v.

DAVID S. FERRIERO, in his official capacity as Archivist of the United States,
*Defendant*,

ALABAMA, LOUISIANA, NEBRASKA, SOUTH DAKOTA, and TENNESSEE,
[*Proposed*] *Intervenor-Defendants*,

Case No. 1:20-cv-242-RC

**[PROPOSED] ANSWER OF [PROPOSED] INTERVENOR-DEFENDANTS ALABAMA, LOUISIANA, NEBRASKA, SOUTH DAKOTA, AND TENNESSEE**

Intervenor-Defendants Alabama, Louisiana, Nebraska, South Dakota, and Tennessee file this answer in response to Plaintiffs' complaint. Unless expressly admitted below, Intervenors deny everything in the complaint. Intervenors respond to the numbered allegations in the complaint as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Paragraph 5 contains legal conclusions that require no response. Intervenors admit, however, that this Court has jurisdiction over the subject matter of the complaint.

6. Paragraph 6 contains legal conclusions that require no response. Intervenors admit, however, that this Court is one where venue is proper.

7. The cited provisions of the Constitution speak for themselves. Paragraph 7 otherwise contains legal conclusions that require no response.

8. The cited documents speak for themselves. Paragraph 8 otherwise contains legal conclusions that require no response.

9. The cited documents speak for themselves. Paragraph 9 otherwise contains legal conclusions that require no response.

10. Abigail Adams' letter speaks for itself. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 10.

11. The Framers' deliberations speak for themselves. Paragraph 11 is otherwise denied. The Constitution includes women. It uses sex-inclusive terms like "people" and "person." It neither specifically refers to "women" nor explicitly refers to "men." Though the Constitution sometimes uses seemingly masculine pronouns ("he," "him," "his"), at the Founding and throughout most of American history those pronouns referred to both men and women.

12. Intervenors admit that the Woman's Rights Convention was held in Seneca Falls, New York in 1848.

13. Intervenors admit that a proposed constitutional amendment concerning women's suffrage was introduced in Congress in 1868. Any debates over that proposal speak for themselves. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 13.

14. Intervenors admit that suffragists advocated for women's suffrage after the Civil War. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 14.

15. Intervenors admit that the Women's Suffrage Parade was held in Washington, D.C. in 1913. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 15.

16. Intervenors admit that Congress proposed the 19th Amendment to the States in 1919. The legislative documents and President Wilson's address speak for themselves.

17. Intervenors admit that the 19th Amendment was ratified by Tennessee, the final State, in 1920. Other documents speak for themselves.

18. Paragraph 18 contains legal conclusions that require no response. Intervenors agree, however, that current federal constitutional law generally applies intermediate scrutiny to laws that draw sex-based distinctions. Intervenors deny that the Equal Rights Amendment was ratified in 2020 or any other year.

19. Admitted.

20. Any proposals to amend the Constitution to prohibit discrimination on the basis of sex speak for themselves. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 20.

21. Intervenors admit that the Senate did not approve an equal rights amendment by the requisite two-thirds vote in 1946.

22. The proposals speak for themselves. Intervenors admit that Congress did not propose an equal rights amendment to the States before 1972.

23. Intervenors admit that the idea of an equal rights amendment, as that concept was understood in the 1960s, was supported by individuals in both the Democratic and Republican parties. Then-Vice President Nixon's statement speaks for itself.

24. The text of the proposed amendment and any suggested changes speak for themselves. Notably, proponents of the Equal Rights Amendments have consistently refused to change the amendment to make it abortion neutral.

25. The legislative documents speak for themselves.

26. Intervenors admit that Congress did not propose an equal rights amendment to the States before 1972.

27. H.J. Res. 208 speaks for itself.

28. Intervenors admit that, in 1972, Congress approved the Equal Rights Amendment by a two-thirds majority vote. Intervenors admit that the amendment was supported by Representatives and Senators from the Democratic and Republican parties.

29. President Nixon's letter speaks for itself.

30. Admitted.

31. Denied. While 22 States had ratified the Equal Rights Amendment by the end of 1972, four of those States (Idaho, Kentucky, Nebraska, and Tennessee) had validly rescinded their ratifications by the end of 1978. And while 31 States had ratified the Equal Rights Amendment as of 1978, one of those States (South Dakota) validly rescinded its ratification in 1979.

32. Denied. No State could have "ratified" the Equal Rights Amendment in recent years because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

33. Denied. Nevada could not have "ratified" the Equal Rights Amendment in 2017 because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

34. The legislative documents speak for themselves.

35. Denied. The Nevada Senate could not have "ratified" the Equal Rights Amendment on March 1, 2017 because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

36. Denied. The Nevada Assembly could not have "ratified" the Equal Rights Amendment on March 20, 2017 because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

37. Denied. The Nevada Senate could not have "completed the ratification process" on March 22, 2017 because the congressional and constitutional deadlines for ratifying the Equal Rights Amendment expired long ago. Senator Ford's statement speaks for itself.

38. Denied. The joint resolution had no legal effect.

39. Denied. Nevada did not become the 36th State to "ratify" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago. Even if those deadlines had not expired, Nevada would be only the 31st State to ratify the Equal Rights Amendment because Idaho, Kentucky, Nebraska, South Dakota, and Tennessee validly rescinded their prior ratifications.

40. Denied. While the records of the National Archives and Records Administration speak for themselves, the official position of the executive branch, including the Archivist and the National Archives and Records Administration, is that the Equal Rights Amendment expired in 1979 without the sufficient votes for ratification.

41. Denied. Illinois could not have "ratified" the Equal Rights Amendment in 2018 because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

42. Denied. While the legislative documents speak for themselves, the Illinois Senate could not have "ratified" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

43. Denied. While the legislative documents speak for themselves, the Illinois House of Representatives did not "ratify" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

44. Denied. Illinois' bill had no legal effect.

45. Denied. While the Illinois Secretary of State's writings speak for themselves, his "certification" had no legal effect.

46. Denied. Illinois did not become the 37th State to "ratify" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago. Even if those deadlines had not expired, Illinois would be only the 32nd State to ratify the Equal Rights Amendment because Idaho, Kentucky, Nebraska, South Dakota, and Tennessee validly rescinded their prior ratifications.

47. Denied. While the records of the National Archives and Records Administration speak for themselves, the official position of the executive branch, including the Archivist and the National Archives and Records Administration, is that the Equal Rights Amendment expired in 1979 without sufficient votes for ratification.

48. Denied. Virginia could not have "ratified" the Equal Rights Amendment in 2020 because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

49. Denied. While the legislative documents speak for themselves, the Virginia legislature could not legitimately consider a "ratification" resolution because the congressional and constitutional deadlines for ratifying the Equal Rights Amendment expired long ago.

50. The floor remarks speak for themselves.

51. The statements speak for themselves.

52. Denied. While the legislative documents speak for themselves, the Virginia legislature could not have "ratified" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

53. Denied. While the votes and copies speak for themselves, Virginia could not have "ratified" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment expired long ago.

54. Denied. Virginia did not become the 38th State to "ratify" the Equal Rights Amendment because the congressional and constitutional deadlines for ratifying that amendment

expired long ago. Even if those deadlines had not expired, Virginia would be only the 33rd State to ratify the Equal Rights Amendment because Idaho, Kentucky, Nebraska, South Dakota, and Tennessee validly rescinded their prior ratifications.

55. Denied. The "ratifications" of Nevada, Illinois, and Virginia were ineffective because the congressional and constitutional deadlines for ratifying the Equal Rights Amendment expired long ago. Even if they were effective, those ratifications did not bring the total number of ratifying States to 38 because Idaho, Kentucky, Nebraska, South Dakota, and Tennessee validly rescinded their ratifications of the Equal Rights Amendment.

56. Denied. The Fourteenth Amendment to the Constitution, according to controlling Supreme Court precedent, already guarantees equal rights for men and women. Any surveys about the Equal Rights Amendment speak for themselves. But public support for a ban on sex discrimination, which the Fourteenth Amendment already accomplishes, does not equal public support for the broader goals of the Equal Rights Amendment's modern proponents. Strong majorities of Americans oppose, for example, using their tax dollars to fund abortion and allowing biological men to compete in women's athletics. Intervenors otherwise lack knowledge or information to form a belief about the allegations in paragraph 56.

57. The Constitution speaks for itself. Paragraph 57 otherwise contains legal conclusions that require no response.

58. The cited statute speaks for itself. Paragraph 58 otherwise contains legal conclusions that require no response.

59. Paragraph 59 contains legal conclusions that require no response.

60. Mr. Wilson's publications and certifications speak for themselves. Paragraph 60 otherwise contains legal conclusions that require no response.

61. Intervenors admit that Virginia transmitted a certified copy of what it (incorrectly) characterized as a ratification of the Equal Rights Amendment to the National Archives and Records Administration on January 27, 2020. Paragraph 61 otherwise contains legal conclusions that require no response.

62. Admitted, except for the last sentence of Paragraph 62 which contains legal conclusions that require no response.

63. H.J. Res. 208 speaks for itself. Paragraph 63 otherwise contains legal conclusions that require no response.

64. Paragraph 64 contains legal conclusions that require no response.

65. Paragraph 65 contains legal conclusions that require no response.

66. Paragraph 66 contains legal conclusions that require no response.

67. Paragraph 67 contains legal conclusions that require no response.

68. Paragraph 68 contains legal conclusions that require no response.

69. Paragraph 69 contains legal conclusions that require no response.

70. Paragraph 70 contains legal conclusions that require no response.

71. Paragraph 71 contains legal conclusions that require no response.

72. Paragraph 72 contains legal conclusions that require no response.

73. Paragraph 73 contains legal conclusions that require no response.

74. Paragraph 74 contains legal conclusions that require no response.

75. Intervenors incorporate their responses to paragraphs 1-74 of the complaint.

76. Paragraph 76 contains legal conclusions that require no response.

77. Paragraph 77 contains legal conclusions that require no response.

78. The Archivist's statements speak for themselves. Paragraph 78 otherwise contains legal conclusions that require no response.

79. Paragraph 79 contains legal conclusions that require no response.

80. Paragraph 80 contains legal conclusions that require no response.

81. Paragraph 81 contains legal conclusions that require no response.

## RESPONSE TO PLAINTIFFS' DEMAND FOR RELIEF

Plaintiffs are not entitled to relief.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The complaint fails to state a claim upon which relief can be granted because Plaintiffs' purported ratifications occurred after the expiration of the seven-year deadline that Congress imposed on the Equal Rights Amendment. That deadline is valid and enforceable, cannot be extended, and has not even arguably been extended past 1982.

### SECOND DEFENSE

The complaint fails to state a claim upon which relief can be granted because Article V of the Constitution requires constitutional amendments to be ratified within a reasonable time after their proposal. By any measure, the almost half-century that passed between the Equal Rights Amendment's proposal by Congress and purported ratification by Virginia is not reasonable.

### THIRD DEFENSE

The complaint fails to state a claim upon which relief can be granted because Idaho, Kentucky, Nebraska, South Dakota, and Tennessee validly rescinded their ratifications of the Equal Rights Amendment. Even counting Plaintiffs' "ratifications," then, only 33 States have ratified the Equal Rights Amendment—short of the three-fourths support that Article V requires.

**WHEREFORE**, Intervenors respectfully ask this Court to enter judgment against Plaintiffs.

Dated: February 19, 2020

Respectfully submitted,

STEVE MARSHALL
*Attorney General of Alabama*

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Solicitor General*
James W. Davis
*Deputy Attorney General*
A. Barrett Bowdre
*Deputy Solicitor General*
Kelsey J. Curtis
*Assistant Solicitor General*
OFFICE OF THE ALABAMA ATTORNEY GENERAL
501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130
(334) 353-2196
(334) 353-8400 (fax)
edmund.lacour@AlabamaAG.gov
jim.davis@AlabamaAG.gov
barrett.bowdre@AlabamaAG.gov
kelsey.curtis@AlabamaAG.gov

/s/ Cameron T. Norris
Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Cameron T. Norris
Alexa R. Baltes
Tiffany H. Bates
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
lexi@consovoymccarthy.com
tiffany@consovoymccarthy.com

JEFF LANDRY
*Attorney General of Louisiana*

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill
*Solicitor General of Louisiana*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov

JASON RAVNSBORG
*Attorney General of South Dakota*

/s/ Paul S. Swedlund
Paul S. Swedlund
*Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 East Highway 14, Suite 1
Pierre, South Dakota 57501-8501
605-773-3215
paul.swedlund@state.sd.us

DOUGLAS J. PETERSON
*Attorney General of Nebraska*

/s/ James A. Campbell
James A. Campbell
*Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov

HERBERT H. SLATERY III
*Attorney General and Reporter of Tennessee*

/s/ Andrée S. Blumstein
Andrée S. Blumstein
*Solicitor General*
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
(615) 741-3492
andree.blumstein@ag.tn.gov