**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMONWEALTH OF VIRGINIA, et al.,

     Plaintiffs,

     v.                                Case No. 1:20-cv-242-RC

DAVID S. FERRIERO, in his official capacity
as Archivist of the United States,

     Defendant.

---

**AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS
The United States Conference of Mayors
Equal Means ERA
38 Agree for Georgia
LARatifyERA**

Chelsea Dunn*
Jodi Siegel*

Jade E. Sipes*
Sharonda Fancher*
Madeline Hughes*
Xeris Gregory*
Jessica Spade*

Elizabeth J. Cappiello
D.C. Bar No. 1018161

SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
(305) 271-8890
Chelsea.Dunn@southernlegal.org
Jodi.Siegel@southernlegal.org

BAKER, DONELSON,
BEARMAN, CALDWELL &
BERKOWITZ, P.C.
420 Twentieth St. North
1400 Shipt Tower
Birmingham, AL 35203
(205) 328-0480
jsipes@bakerdonelson.com
mhughes@bakerdonelson.com
sfancher@bakerdonelson.com
xgregory@bakerdonelson.com
jspade@bakerdonelson.com

BAKER, DONELSON,
BEARMAN, CALDWELL &
BERKOWITZ, P.C.
901 K Street NW
Suite 900
Washington, D.C. 20001
(202) 326-5026
ecappiello@bakerdonelson.com

*Pro Hac Vice* forthcoming

**Counsel for Amici Curiae**

# TABLE OF CONTENTS

INTERESTS OF THE AMICI ............................................................................ 1

ARGUMENT .................................................................................................... 3

    I.      INTRODUCTION .................................................................... 3

    II.     WITH THE RATIFICATION OF THE ERA, THE U.S. JOINS OTHER NATIONS IN GUARANTEEING EQUALITY FOR WOMEN ................... 3

    III.    SEX DISCRIMINATION MAY BE SUBJECT TO "STRICT SCRUTINY" BY THE COURTS .................................................................... 7

    IV.   THE ERA PROVIDES A CONSTITUTIONAL BASIS FOR FEDERAL LEGISLATION GUARANTEEING CLAIMS OF SEX DISCRIMINATION OR GENDER-BASED VIOLENCE ................................................... 9

        A.    Current law fails to allow victims of sex discrimination and gender-based violence to hold their abusers accountable ........................... 9

        B.    The ERA is a necessary tool to eradicate workplace discrimination ................................................................. 13

            i.    Current laws protecting women from wage discrimination are not effective ............................................................... 14

            ii.   The Equal Pay Act stops short ........................................... 17

            iii.  Current law does not provide adequate accommodations for pregnant women .......................................................... 18

            iv.  The ERA will provide uniform, lasting protections from sex-based discrimination across the county ....................... 21

    V.     CONCLUSION .................................................................... 24

CERTIFICATE OF SERVICE .......................................................................... 26

APPENDIX A ................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

<small>C</small>ASES

*Craig v. Boren,* 429 U.S. 190 (1976) .................................................................. 8

*Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013) ................................... 8

*Frontiero v. Richardson*, 411 U.S. 677 (1973)................................................. 9

*J.E.B. v. Ala.*, 511 U. S. 127 (1994).................................................................... 8

*Kouba v. Allstate*, 691 F.2d 873 (9th Cir. 1982) ............................................ 18

*Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) ......................................... 23

*Marbury v. Madison*, 5 U.S. 137 (1803).................................................... 9,10

*Michael M. v. Sup. Ct. of Sonoma City*, 450 U.S. 464 (1981)........................ 8

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982)................................. 8

*Nguyen v. Immigration & Naturalization Servs.*, 533 U.S. 53 (2001)............................. 21

*Perkins v. Rock-Tenn Servs., Inc.*, 700 F. App'x 452 (6th Cir. 2017) ............................. 22

*Reed v. Reed*, 404 U.S. 71 (1971) .................................................................. 8

*Riser v. QEP Energy*, 776 F.3d 1191 (10th Cir. 2015) .......................... 22, 23

*Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) .............................. 18, 22

*Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966 (8th Cir. 2009) ................... 9

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ...................................................... 8

*Rowitz v. McClain*, 138 N.E.3d 1241 (Ohio App. 10th Dist. 2019)................................ 24

*Tagami v. City of Chicago,* 875 F.3d 375 (7th Cir. 2017), as amended (Dec. 11, 2017)........................................................................................................ 9

*Taylor v. White*, 321 F.3d 710 (8th Cir. 2003) ........................................ 17, 23

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) ............................... 12

*United States v. Morrison*, 529 U.S. 598 (2000).................................. 9, 10, 11

*United States v. Virginia*, 518 U.S. 515 (1996)......................................... 8, 9

*Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011) ..................................................... 16, 17

*Wernsing v. Dep't of Human Servs., State of Ill.*, 427 F.3d 466 (7th Cir. 2005). 17, 18, 23

*Young v. United Parcel Service, Inc.*, 575 U.S. 206 (2015).......................................... 20

**STATUTES**

29 U.S.C. § 206(d) ...................................................................................................... 14

34 U.S.C. § 12291 ....................................................................................................... 11

42 U.S.C. § 13981 ................................................................................................. 10, 11

42 U.S.C. § 2000e.................................................................................................. 14, 19

Cal. Lab. Code § 432.3(b) (2019)................................................................................ 23

Conn. Gen. Stat. § 31-40z(b)(5) (2019)...................................................................... 23

Del. Code Ann. tit. 19, § 709B (2017)......................................................................... 23

Haw. Rev. Stat. § 378-2.3 (2019)................................................................................ 23

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).................. 15

Mass. Gen. Laws ch. 149 § 105A ............................................................................... 23

N.J. Stat. Ann. § 34:6B-20 (2020) ............................................................................... 23

N.Y. Lab. Law § 194-a (2020) ..................................................................................... 23

Me. Rev. Stat. tit. 5, § 4577 (2019).............................................................................. 23

Or. Rev. Stat. Ann. § 659A.357 (2017)........................................................................ 23

Vt. Stat. Ann. tit. 21, § 495m (2018) ........................................................................... 23

**CONSTITUTIONS**

Alaska Const. art I, § 3 ............................................................................................... 21

Cal. Const. art. I, §§ 8, 31(a) ..................................................................................... 22

Colo. Const. art. II, § 29 ............................................................................................. 21

Conn. Const. art. I, § 20 ............................................................................................. 21

Const. of Democratic People's Republic of Korea, 1972 rev. 2016, Ch. V, Art. 77
      (North Korea) .......................................................................................................... 7

Const. of the Islamic Republic of Afghanistan, 2004, Ch. II, Art. 22. ................................ 5

Del. Const. art. I, §21 ................................................................................ 21

Fla. Const. art. I, § 2 ................................................................................ 21

Haw. Const. art. I, § 3 ................................................................................ 21

Ill. Const. art. I, § 18 ................................................................................ 21

Iowa Const. art. I, § 1 ................................................................................ 21

La. Const. art. I, § 3 ................................................................................ 22

Md. Const. Decl. of Rts. art. 46 ................................................................ 21

Mass. Const. pt. I, art. 1 ............................................................................ 21

Mont. Const. art. II, § 4 ............................................................................ 21

Neb. Const. art. I, §30 ................................................................................ 22

N.H. Const. pt. I, art. 2 ............................................................................ 21

N.J. Const. art. I, para. 1 & art. X, para. 4 ................................................ 22

N.M. Const. art. II, § 18 ............................................................................ 21

Pa. Const. art. I, § 28 ................................................................................ 21

R.I. Const. art. I, § 2 ................................................................................ 22

Tex. Const. art. I, § 3a ................................................................................ 21

Transitional Const. of Republic of S. Sudan, 2011 rev. 2013, Pt. 2, Art. 16. ................ 5

Utah Const., art. IV, § 1 ............................................................................ 21

Va. Const. art. I, § 11 ................................................................................ 21

Wash. Const. art. XXXI, § 1 ...................................................................... 21

Wyo. Const. art. I, § 3................................................................................ 21

OTHER AUTHORITIES

Leila Abolfazli, *Criminal Law: Violation Against Women Act (VAWA)*, 7 Geo. J. Gender & L. 863, 865-66 (2006). ..................................................... 11, 12

Afghanistan: Background & U.S. Policy, CONG. RESEARCH SERVICE, 38 (July 18, 2019)....................................................................................................... 6

Am. Ass'n of Univ. Women, The Simple Truth About the Gender Pay Gap: Fall 2019 Update (Fall 2019), https://www.aauw.org/app/ uploads/2020/02/Simple-Truth-Update-2019_v2-002.pdf................................................................................. 15

Dr. Mary Dunn Baker, Class Certification Statistical Analyses Post-Dukes, 27 ABA J. Lab. & Emp. L. 471, 473 (2012) ............................................................ 16, 17

Lisa Baldez, The U.S. Might Ratify the ERA. What Would Change?, The Wash. Post, (Jan. 23, 2020),https://www.washingtonpost.com/politics/2020/01/23/us-might-ratify-era-what-would-change/........................................................................ 14

Stephanie Bornstein, The Statutory Public Interest in Closing the Pay Gap, 10 Ala. C.R. & C.L. L. Rev. 1, 3 (2019). ......................................................................... 15

Stephanie Bornstein, Equal Work, 77 Md. L. Rev. 581, 602-09 (2018). ......................... 16

Heather Boushey, Finding Time: the Economics of Work-life Conflict 7 (2016). ........... 16

David Bowsher, Cracking the Code of United States v. Va., 48 Duke L.J. 305, 307-08 (1998) ....................................................................................................... 9

Martha F. Davis, The Equal Rights Amendment: Then & Now, 17 Colum. J. Gender & L. 419, 422 (2008). ...................................................................................... 7

Nora Ellmann & Jocelyn Frye, Efforts to Combat Pregnancy Discrimination: Confronting Racial, Ethnic, & Economic Bias, Ctr. for Am. Progress (Nov. 2, 2018), https://www.americanprogress.org/issues/women/news/2018/ 11/02/460353/efforts-combat-pregnancy-discrimination/ ......................................... 19

Exec. Order No. 2018-18-03 (Pa. June 6, 2018), available at https://www.governor.pa.gov/executive-order-2018-18-03-equal-pay-for-employees-of-the-commonwealth. ........................................................................... 23

Joanna L. Grossman & Deborah L. Brake, Afterbirth: The Supreme Court's Ruling in Young v. UPS Leaves Many Questions Unanswered, VERDICT, (April 20, 2015), https://verdict.justia.com/2015/04/20/afterbirth-the-supreme-courts-ruling-in-young-v-ups-leaves-many-questions-unanswered.......................... 19

Victoria Hartman, End the Bloody Taxation: Seeing Red on the Unconstitutional Tax on Tampons, 112 Nw. U. L. Rev. 313, 348 (2017)............................................. 24

Illinois Exec. Order No. 2019-02 (Jan. 15, 2019), available at https://www2.illinois.gov/IISNews/19609-Executive_Order_2019-02.pdf................. 23

Intro. to Federal Voting Rights Laws: The Effect of the Voting Rights Act, U.S.
Dep't of Justice (June 19, 2009), *available at*
https://www.justice.gov/crt/introduction-federal-voting-rights-laws-0 ........................ 13

Paul Benjamin Linton, *State Equal Rights Amendments: Making a Difference or
Making a Statement?*, 70 Temple L. Rev. 907, 915 (Fall 1997) .............................. 22

Nat'l Comm. on Pay Equity, *The Wage Gap Over Time: In Real Dollars, Women
See a Continuing Gap*, https://www.pay-equity.org/info-time.html. .......................... 15

Nat'l Partnership for Women & Families, *America's Women & the Wage Gap* 2
(Apr. 2018), http://www.nationalpartnership.org/research-library/workplace-
fairness/fair-pay/americas-women-and-the-wage-gap.pdf ...................................... 15

N.C. Exec. Order No. 93 (Apr. 2, 2019), *available at*
https://files.nc.gov/governor/documents/files/EO93-
_Prohibiting_the_Use_of_Salary_History_in_the_State_Hiring_Process.pdf .......... 23

Rape, Abuse & Incest Nat'l Network, *available at*
https://www.rainn.org/statistics/criminal-justice-system ........................................... 10

Rape Prevention & Educ. Program, Ctrs. for Disease Control & Prevention, 2013,
*available at* http://www.cdc.gov/violenceprevention/rpe/> ........................................ 10

Warren Ryan, *A Constitution for Sudan*, USAID FROM THE AM. PEOPLE
FRONTLINES (Jan./Feb. 2012), https://2012-2017.usaid.gov/news-
information/frontlines/democracy-human-rights-governance/constitution-
sudan ...................................................................................................................... 4

Paul D. Shinkman, *Key Issue Could Cost Afghanistan Billions in Foreign Aid*,
U.S. NEWS & WORLD REPORT (Apr. 24, 2019),
https://www.usnews.com/news/world/articles/2019-04-24/womens-rights-
issues-could-cost-afghanistan-billions-in-foreign-aid. ................................................. 6

South Sudan: History, USAID FROM THE AM. PEOPLE, (May 11, 2020),
https://www.usaid.gov/south-sudan/history ............................................................... 4

The United States Conference of Mayors,
https://www.usmayors.org/mayors/meet-the-mayors/ (last visited June 27,
2020) ........................................................................................................................ 2

Hannibal Travis*, Freedom or Theocracy?: Constitutionalism in Afghanistan and
Iraq*, 3 Nw. J. Int'l Hum. Rts. 1, 14 (2005) (TRAVIS) ............................................. 5, 6

Elizabeth Warren & Amelia Warren Tyagi, *The Two-Income Trap: Why Middle-
Class Mothers & Fathers Are Going Broke* 8 (2003) ........................................... 15, 16

Torie Abbott Watkins, *The Ghost of Salary Past: Why Salary History Inquiries Perpetuate the Gender Pay Gap & Should Be Ousted As A Factor Other Than Sex*, 103 Minn. L. Rev. 1041, 1044 (2018) ..................................................... 17

Jennifer Weiss-Wolf, *U.S. Policymaking to Address Menstruation: Advancing an Equity Agenda*, 25 Wm. & Mary J. Race, Gender & Soc. Just. 493, 499 (2019)...... 24

Linda J. Wharton, *State Equal Rights Amendments Revisited: Evaluating Their Effectiveness in Advancing Protection Against Sex Discrimination,* 36 Rutgers L.J. 1201, 1201-02, 1288-1293 (2005)............................................................. 21, 22

United Nations,  U.N.T.S. 1249, *available at* https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=IV-8&chapter=4&lang=en. ............................................................................. 6

UN Women, https://www.un.org/womenwatch/daw/cedaw/ ....................................... 6, 7

U.S. EEOC, Fact Sheet: Pregnancy Discrimination, No. EEOC-NVTA-0000-11, https://www.eeoc.gov/laws/guidance/fact-sheet-pregnancy-discrimination (Jan. 15, 1997)............................................................................................. 19

**INTERESTS OF THE AMICI**

The ratification of the Equal Rights Amendment (ERA) is an issue of extraordinary importance to the Amici. As this case presents questions of the validity of the ERA, the decision of this Court will impact women's rights and equality between the sexes. Amici have all directed extensive efforts and resources towards the passage of the ERA and thus have a strong interest in the outcome of the case.

The United States Conference of Mayors is the official non-partisan organization of cities with populations of 30,000 or more. There are more than 1,400 such cities in the country today. Cities are represented in the Conference by their chief elected official, the mayor.  The Conference of Mayors advocates on a daily basis for a number of issues that are important to cities and important to our nation's mayors. In 1977, it adopted policy in support of the ERA, calling it necessary to ensure protection of women's rights.  In 2019, the Conference reaffirmed that policy and pledged to play an active role in ensuring its full ratification.   For more than five decades, the Conference of Mayors has been committed to achieving equality of all people.

Equal Means ERA is a nonpartisan group of women and men who have come together to support South Carolina's ratification of the ERA to the U.S. Constitution. Equal Means ERA feels that the ratification of the ERA is a moral issue requiring political action: one that looks forward to a legal system in which every person will be judged on the basis of individual merit, so that all people have the power to make full use of their political and economic capabilities. Equal Means ERA believes that by recognizing the law, dignity, and worth of every one of its citizens, the state of South Carolina and the country as a

whole would empower the infinite talents of more than half of its citizens – who happen to be women.

38 Agree for Georgia is a non-partisan organization formed with the goal of helping Georgia become the 38th state to ratify the ERA. 38 Agree for Georgia believes that the United States needs a constitutional guarantee of equality to protect against current threats to the significant advances in women's rights achieved over the past half century, and it urges that the ratification of the ERA would improve the standing of the U.S. globally with respect to equal justice under the law.

LARatifyERA is a coalition of organizations dedicated to Louisiana ratifying the ERA. LARatifyERA believes that the ratification of the ERA is a long-overdue remedy to the inequality faced by girls and women over the past two hundred years, and that any democracy that fails to include women in its founding document is a failed democracy.

Equal Means ERA, 38 Agree for Georgia, and LARatifyERA are located in states that have not ratified the ERA. They have an important interest in ensuring that the ratification of the ERA by the other 38 states becomes a part of the U.S. Constitution so that the citizens of the southern states of South Carolina, Georgia, and Louisiana have constitutional protections on the basis of sex. Seventy members represented by the Conference of Mayors are located in Georgia, Louisiana, and South Carolina. *See* https://www.usmayors.org/mayors/meet-the-mayors/.  Hundreds of mayors are in the 26 states that do not have constitutional protections in their state constitutions. *See infra* notes 3 & 4. These mayors have a special interest in ensuring the ratification of the ERA is valid so that their citizens have federal constitutional protections on the basis of sex.

All Amici assert that this Court's ruling on the pending issues before it has the potential to affect the safety and equality of women and men across the country. Amici support the Plaintiff States in seeking an order that the ERA is valid and part of the U.S. Constitution.

## ARGUMENT

### I.      INTRODUCTION

This case does indeed present a constitutional matter of great importance. (*See* ECF 31, Eagle Forum Amicus Br., at 3.) Adding the duly ratified ERA to the Constitution will guarantee the rights held by all citizens, men and women alike, by prohibiting discrimination on the basis of sex. This brief presents three arguments to provide context for the importance of a valid ERA. One, the United States will join the vast majority of nations that already include such protections in their constitutions. Two, governmental actions that treat men and women differently will be presumptively unconstitutional unless the government can show the law or policy is necessary to achieve a compelling interest. And three, the ERA will ensure that rights on the basis of sex will be stronger, consistently applied, and permanently held.

### II.      WITH THE RATIFICATION OF THE ERA, THE U.S. JOINS OTHER NATIONS IN GUARANTEEING EQUALITY FOR WOMEN.

The ratification of the ERA brings the United States into the international norm of guaranteeing protections on the basis of sex and is in keeping with U.S. efforts encouraging other countries to guarantee equal rights to women. With the required 38 states, the American citizens have expressed their intent to outlaw discrimination on the basis of sex in line with the vast majority of the rest of the world's countries. The constitutions of 168 nations provide for equal rights on the basis of sex. (*See* Appendix

A.) The United States is the only industrialized country that does not specifically mention equality on the basis of sex in its Constitution. With the ratification of the ERA, the United States joins all other industrialized countries and numerous less-industrialized nations in guaranteeing equality in their constitutions. Even countries that the United States *sanctions* for various human rights issues (e.g., Cuba, Iran, Sudan, Syria, and Venezuela) contain equality-of-sex clauses.

Although the United States Constitution does not contain an equality-of-sex clause and thus has been an outlier, the United States government has promoted the development of equality clauses in the constitutions of other countries. The examples of South Sudan and Afghanistan are instructive.

In South Sudan, the United States has an extensive history in providing aid funds. *South Sudan: History*, USAID FROM THE AM. PEOPLE, (May 11, 2020), https://www.usaid.gov/south-sudan/history. After the signing of the Comprehensive Peace Agreement in 2005, funds were used to assist with the functionality of the Southern Sudan Government. *Id*. To help assist with writing a new constitution, the U.S. Agency for International Development (USAID) partnered with the Sudanese Institute for the Development of Civil Society. Warren Ryan, *A Constitution for Sudan*, USAID FROM THE AM. PEOPLE FRONTLINES (Jan./Feb. 2012), https://2012-2017.usaid.gov/news-information/frontlines/democracy-human-rights-governance/constitution-sudan.      The purpose of this partnership was to facilitate discussion for constitutional reform for a new constitution. *Id*. The goal was to create a constitution of equitable governance and peace. *Id*. USAID's partnership to assist in writing a new constitution for South Sudan resulted in

a constitution with an important provision prohibiting sex-based discrimination.   South

Sudan's constitution includes this provision prohibiting sex-based discrimination:

> (1) Women shall be accorded full and equal dignity of the
> person with men.
> (2) Women shall have the right to equal pay for equal work
> and other related benefits with men.
> (3) Women shall have the right to participate equally with men
> in public life.

Transitional Const. of Republic of S. Sudan, 2011 rev. 2013, Pt. 2, Art. 16.

Following the 2001 invasion of Afghanistan after the 9/11 attacks, the interim

Islamic Transitional Authority of Afghanistan was created. Hannibal Travis, *Freedom or*

*Theocracy?: Constitutionalism in Afghanistan and Iraq*, 3 Nw. J. Int'l Hum. Rts. 1, 14

(2005) (Travis). Laws were being enforced by the Afghan Supreme Court that resulted in

great detriment to women, including laws prohibiting women from traveling without

supervision, preventing married women from attending high school, and prohibiting men

and women from being educated together. *Id*. A new constitution was ratified in 2004 in

Afghanistan, and included this significant provision calling for equality before law for men

and women:

> Any kind of discrimination and privilege between the citizens
> of Afghanistan are prohibited. The citizens of Afghanistan –
> whether man or woman – have equal rights and duties before
> the law.

Const. of the Islamic Republic of Afghanistan, 2004, Ch. II, Art. 22.

The new constitution was praised internationally, and specifically by the U.S.

Ambassador to Afghanistan at the time, for its protection of human and women's rights.

TRAVIS, at 18. And the U.S. continues to threaten withholding aid if Afghanistan does not protect women's rights.[1]

In addition to joining all other industrialized nations (and less-industrialized nations like South Sudan and Afghanistan) with a valid ERA as part of the U.S. Constitution, the United States could now ratify the United Nations Convention on the Elimination of All Forms of Discrimination Against Women (Convention), which specifically calls on countries to establish equal rights between men and women in all areas of life. One hundred eighty-nine countries have ratified this treaty.  Sudan, Somalia, Iran, Palau, Tonga, and the United States have not. *See* U.N.T.S. 1249, *available at* https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=IV8&chapter=4&lang=en.

The Convention is often described as an international bill of rights for women, and defines discrimination against women as "any distinction, exclusion or restriction made on the basis of sex which has the effect or purpose of impairing or nullifying the recognition, enjoyment or exercise by women, irrespective of their marital status, on a basis of equality of men and women, of human rights and fundamental freedoms in the political, economic, social, cultural, civil or any other field." *See* UN Women, https://www.un.org/womenwatch/daw/cedaw/. The Convention ensures women's equal access to, and equal opportunities in, political and public life, education, health and

---

[1] While on paper it was a huge step forward for Afghan women, in reality women have still been treated unfairly, with many liberties denied to them that are simultaneously provided for men. To address this, U.S. aid is restricted on conditions that Afghanistan is complying with a number of certifiable measures, including the protection of women's rights. *Afghanistan: Background & U.S. Policy*, CONG. RESEARCH SERV., 38 (July 18, 2019). In 2019, the U.S. Special Instructor General for Afghanistan Reconstruction announced that funding for Afghanistan will be withheld unless rights for women are secured in a potential peace agreement with the United States. Paul D. Shinkman, *Key Issue Could Cost Afghanistan Billions in Foreign Aid*, U.S. NEWS & WORLD REPORT (Apr. 24, 2019), https://www.usnews.com/news/world/articles/2019-04-24/womens-rights-issues-could-cost-afghanistan-billions-in-foreign-aid.

employment. It affirms women's rights to acquire, change, or retain their nationality and the nationality of their children. The parties also agree to take appropriate measures against all forms of traffic in women and exploitation of women. Countries that have ratified or acceded to the Convention are legally bound to put its provisions into practice. *See id*. The United States has not yet made this commitment to the equality of women, although the ERA confirms that equality on the basis of sex is now a fundamental governing principle.

The United States encourages other countries to add equality clauses into their constitutions and uses international aid as a strong incentive to protect women's rights. However, it is these very same rights that the United States has fought for on the international stage that it now seeks in its motion to dismiss to exclude from its Constitution. The citizens of the United States have spoken and affirmatively said that they do not want to be an international outlier. Even North Korea's Constitution provides that "Women are accorded equal social status and rights with men." Const. of Democratic People's Republic of Korea, 1972 rev. 2016, Ch. V., Art. 77 (North Korea). The U.S. Archivist should add the ERA to the Constitution so that the expressed principle of the American people will be institutionalized.

### III.   SEX DISCRIMINATION MAY BE SUBJECT TO "STRICT SCRUTINY" BY THE COURTS.

Ratifying the ERA will allow courts to analyze sex discrimination under the "strict scrutiny" standard alongside race, religion, and national origin. *See* Martha F. Davis, *The Equal Rights Amendment: Then & Now*, 17 Colum. J. Gender & L. 419, 422 (2008). The Fourteenth Amendment applies strict scrutiny to only race, religion, and national origin and does not address sex or gender discrimination. In fact, it was not until 1971 that the

Supreme Court applied the Fourteenth Amendment to prohibit sex discrimination for the first time, under rational basis review. *Reed v. Reed*, 404 U.S. 71 (1971). Expanding on *Reed*, the Supreme Court explained that gender is classified as a quasi-suspect class, rather than a suspect class like race, religion, and national origin, and is subject to intermediate rather than strict scrutiny. *Craig v. Boren,* 429 U.S. 190 (1976). To this day, gender or sex discrimination is subject to the lesser standard. *See United States v. Va.*, 518 U.S. 515, 531-33 (1996); *J.E.B. v. Ala.*, 511 U. S. 127, 136-37 (1994); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982).

Strict scrutiny requires a discriminatory law to be narrowly tailored to a compelling state interest in order to be upheld as constitutional. *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013). Intermediate scrutiny is less strenuous and is more likely to allow discriminatory laws to stand. To pass intermediate scrutiny, a discriminatory law must further an important government interest and must do so by means that are substantially related to that interest. *See Va.*, 518 U.S. at 533; *Hogan*, 458 U.S. at 724; *Boren*, 429 U.S. at 197-99. While intermediate scrutiny has more teeth than rational basis review, the hurdles it presents are easier to overcome in validating a discriminatory law. This lower hurdle has allowed courts to make decisions that draw heavily on stereotypical views of biological and physical gender differences. *See Michael M. v. Sup. Ct. of Sonoma City*, 450 U.S. 464 (1981); *Rostker v. Goldberg*, 453 U.S. 57 (1981).

In more recent decisions, the Supreme Court, in what many call an effort to redefine an appropriate standard for reviewing gender classification, applies heightened or "skeptical" scrutiny that requires extremely persuasive evidence to uphold a government action that differentiates on the basis of sex. *Va.*, 518 U.S. at 531.  While this

decision appeared to move gender discrimination closer to strict scrutiny, many courts fail to require an "exceedingly persuasive justification" when evaluating sex discrimination under an intermediate standard of review. *See, e.g., Tagami v. City of Chicago,* 875 F.3d 375, 380 (7th Cir. 2017), as amended (Dec. 11, 2017) (finding in favor of defendant on a claim of sex discrimination without any mention of the government's obligation to present an "exceedingly persuasive justification"); *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 974 (8th Cir. 2009) (same); *see also* David Bowsher, *Cracking the Code of United States v. Va.*, 48 Duke L.J. 305, 307-08 (1998).

Compelling the Archivist to add the duly ratified ERA to the Constitution would codify the prohibition of gender and sex discrimination and would allow the Supreme Court to classify sex/gender as a suspect class alongside race, religion, and national origin. *Frontiero v. Richardson*, 411 U.S. 677, 692 (1973) (Powell, J., concurring) ("The Equal Rights Amendment, which if adopted will resolve the substance of this precise question [of strict scrutiny], has been approved by the Congress and submitted for ratification by the States."). An amendment to the U.S. Constitution would remove any uncertainty about the fundamental protections on the basis of sex.

## IV.   THE ERA PROVIDES A CONSTITUTIONAL BASIS FOR FEDERAL LEGISLATION GUARANTEEING CLAIMS OF SEX DISCRIMINATION OR GENDER-BASED VIOLENCE.

### A. Current law fails to allow victims of sex discrimination and gender-based violence to hold their abusers accountable.

Federal constitutional law is clear-cut —"[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000); *see also Marbury v. Madison*, 5 U.S. 137 (1803) ("The powers of the legislature are defined and limited; and that those limits may not be

9

mistaken, or forgotten, the constitution is written."). Thus, in order for Congress to enact federal laws prohibiting sex discrimination or gender-based violence, it needs a constitutional basis, or constitutional "hook," to do so. The ERA provides just such a hook.

One need look no further than the Violence Against Women Act (VAWA) to see why the ERA is needed. VAWA was enacted in 1994 after *four years* of hearings (which included testimony from physicians, law professors, rape survivors, and domestic violence victims) and a "voluminous" record that revealed that *one in four* women will be victims of a violent crime during their lives, that as many as *half* of the homeless women in the country are "fleeing domestic violence," and that between 2,000 and 4,000 women *die each year* as a result of domestic abuse. *See Morrison*, 529 U.S. at 629-33, 635 (Souter, J., dissenting). Those victims, Congress found, faced a 4% chance of having their abusers arrested, prosecuted, and found guilty and a less than 1% chance of collecting damages from their abusers. *Id.* at 633-34. (Almost twenty years after VAWA was enacted, the Centers for Disease Control still estimates that nearly 1 in 2 women will experience some form of sexual violence in their lifetime. Rape Prevention & Educ. Program, Ctrs. for Disease Control & Prevention, 2013, *available at* http://www.cdc.gov/ violenceprevention/rpe/>. And only 9% of all rapists will be prosecuted. Rape, Abuse & Incest Nat'l Network, *available at* https://www.rainn.org/statistics/criminal-justice-system.)

Based on this "mountain of data," Congress enacted VAWA to provide a private right of action for victims of gender-based violence. 42 U.S.C. § 13981; *see also Morrison*, 529 U.S. at 661 (Breyer, J., dissenting). Specifically, VAWA authorized victims of gender-based violence (like assault, rape, or domestic violence victims) to sue their perpetrators in court if they could prove those perpetrators "commit[ted] a crime of violence motivated

by gender." 42 U.S.C. § 13981. In other words, Congress passed VAWA to provide a federal remedy for gender-based violence victims because, it reasoned, "many participants in state justice systems are perpetuating an array of erroneous stereotypes and assumptions," which result in "insufficient investigation and prosecution of gender-motivated crime, inappropriate focus on the behavior and credibility of the victims of that crime, and unacceptably lenient punishments for those who are actually convicted of gender-motivated violation." *Morrison*, 529 U.S. at 620.

By all appearances, a model case for VAWA's civil-remedy provision would be one where a female college student was "repeatedly raped" and subjected to "vulgar remarks [made by her rapist] that cannot fail to shock and offend"—remarks so outrageous that the Supreme Court refused to repeat them in its written opinion. *Id*. at 602. But Congress used § 5 of the Fourteenth Amendment and the Commerce Clause as its Constitutional bases for VAWA, and according to the Supreme Court, those were insufficient to support VAWA and its goal of giving the repeatedly-raped college student — and other victims of gender-based violence — a civil remedy. *Id*. at 607-27 (holding that Congress's effort "to provide a federal civil remedy can be sustained neither under the Commerce Clause nor under § 5 of the Fourteenth Amendment").

Now, as a result of the *Morrison* decision, VAWA is toothless. To be sure, it provides funding for police training, shelters for domestic violence victims, and civil legal services. *See generally* 34 U.S.C. § 12291, *et seq.* But participation in VAWA's programs is entirely voluntary, and even if a state signs on, there is no oversight or monitoring of the state's participation. Leila Abolfazli, *Criminal Law: Violation Against Women Act*

*(VAWA)*, 7 GEO. J. GENDER & L. 863, 865-66 (2006). No federal law currently provides a civil remedy for victims of gender-based violence.

The Fourteenth Amendment, according to the Court, also fails to provide an adequate Constitutional hook to protect victims of gender-based violence, illustrating again why the ERA is needed. The case of *Town of Castle Rock v. Gonzales* makes this point. 545 U.S. 748 (2005). There, an abused wife's calls for help to the local police were repeatedly ignored, her restraining order against her husband (prohibiting him from "molest[ing] or disturb[ing]" his children) was not enforced by the local police, and her abusive husband ultimately kidnapped and killed their three daughters despite her calls for help. *Id.* at 751-54 (calling the facts of the case "horrible"). When she tried to sue the police for not doing their job (indeed, the officer who took her statement that her husband had kidnapped the children "made no reasonable effort to enforce the TRO or locate the three children[;] [i]nstead, he went to dinner," *id.* at 754), the Court held that she could not do so under the Fourteenth Amendment because she had no property right to have her protective order enforced. *Id.* at 768. Said another way, the Court determined that the Constitution provided *no* remedy for a state's failure to protect victims of gender-based violence. It is not hard to imagine that police may respond more consistently to calls from victims with protective orders if the law allowed the victims to hold them liable for their willful failures to do so. But no such law currently exists.

*Morrison* and *Gonzalez* make clear that no substantive remedy exists to protect victims of gender-based violence, and it appears that Congress has no authority to enact one under the current Constitution. The ERA is needed to fill this gap. Once added to the

Constitution, the ERA — like other Constitutional amendments before it — would give Congress the constitutional hook on which to base this much-needed legislation.

Consider the Fourteenth Amendment. Ratified in 1868, the Amendment granted citizenship to all persons born or naturalized in the United States (including former slaves) and guaranteed all citizens "equal protection of the laws." Congress used it as the constitutional basis to pass landmark civil rights legislation, including the Civil Rights Act of 1964 (that ended segregation in public places, banned employment discrimination on the basis of race, color, religion, sex, or national origin, and created the Equal Employment Opportunity Commission) and the Voting Rights Act of 1965 (that secures and protects the right to vote for racial minorities throughout the country and is considered to be "the most effective piece of federal civil rights legislation ever enacted in the country"). *See* Intro. to Federal Voting Rights Laws: The Effect of the Voting Rights Act, U.S. Dep't of Justice (June 19, 2009), *available at* https://www.justice.gov/crt/introduction-federal-voting-rights-laws-0.

Like the Fourteenth Amendment, the ERA will provide a constitutional basis for Congress to promulgate statutes protecting women's rights and ensuring that they are treated as equal citizens under the law. Even the amicus brief of the Eagle Forum appears to acknowledge this. (*See* ECF 31-1, at 19 (noting that the ERA may set a norm for equal pay, require states to enforce their laws against gender violence, and prohibit pregnancy discrimination, among other things).)

### B. The ERA is a necessary tool to eradicate workplace discrimination.

Further support for adding the ratified ERA into the Constitution exists in the lingering discrimination women face in the American workplace. Despite the multiple pieces of federal legislation purportedly targeted at eradicating workplace discrimination,

the problem persists. Because the ERA may require employers to meet a higher burden to justify policies that have a discriminatory effect than currently exists under federal discrimination legislation, the ERA is primed to solve this problem that has evaded resolution thus far. *See* Lisa Baldez, *The U.S. Might Ratify the ERA. What Would Change?*, The Wash. Post, (Jan. 23, 2020), *available at* https://www.washingtonpost.com /politics/2020/01/23/us-might-ratify-era-what-would-change/ (noting research of outcomes in states that have adopted equal rights amendments shows that "having a state-level ERA significantly increases the likelihood that judges will apply a higher standard of law in sex discrimination cases" that "leads state-level courts to rule more often in favor of the person claiming sex discrimination").

### i. Current laws protecting women from wage discrimination are not effective.

Pay discrimination based on gender has been prohibited for more than half a century, with the passage of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964.   29 U.S.C. § 206(d) ("No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions"); 42 U.S.C. §§ 2000e ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin.").[2] In 2009, the Lilly Ledbetter Fair Pay Act was passed, strengthening employees' ability to file Title VII claims by restarting the statute of limitations for each discriminatory paycheck. *See* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).

Yet despite these protections, pervasive inequities in pay between men and women continue to exist. In 2018, women made 81.6% of what men made. Nat'l Comm. on Pay Equity, *The Wage Gap Over Time: In Real Dollars, Women See a Continuing Gap*, https://www.pay-equity.org/info-time.html. The pay gap is even wider for women of color: Black women make only 62 cents and Hispanic women on 54 cents for every dollar paid to men. Am. Ass'n of Univ. Women, *The Simple Truth About the Gender Pay Gap: Fall 2019 Update* (Fall 2019), https://www.aauw.org/app/ uploads/2020/02/Simple-Truth-Update-2019_v2-002.pdf. In fact, the slow increase in women's pay between 1963 and 2010 reflects a narrowing of the wage gap by less than half a cent per year. *Id*. One study suggests "women employed full time in the United States lose a combined total of more than $900 billion every year due to the wage gap." Nat'l Partnership for Women & Families, America's Women & the Wage Gap 2 (Apr. 2018), http://www.nationalpartner ship.org/research-library/workplace-fairness/fair-pay/americas-women-and-the-wage-gap.pdf. This is especially concerning when families with children typically need the incomes of both parents to afford basic needs and almost 40% of children have a mother who is a sole breadwinner. Elizabeth Warren & Amelia Warren Tyagi, *The Two-Income*

---

[2] These two statutes, passed within a year of each other, provide two mechanisms for an employee to challenge pay discrimination. Stephanie Bornstein, *The Statutory Public Interest in Closing the Pay Gap*, 10 Ala. C.R. & C.L. L. Rev. 1, 3 (2019). The Equal Pay Act requires equal pay for equal work unless the "*employer* can prove the disparity *was not* based on sex." *Id.* Under Title VII, an employee alleging sex discrimination in compensation, hiring, firing, and other terms and conditions of work must prove the discrimination. *Id.*

*Trap: Why Middle-Class Mothers and Fathers Are Going Broke* 8 (2003); Heather Boushey, *Finding Time: the Economics of Work-Life Conflict* 7 (2016).

While Title VII and the Equal Pay Act have helped remedy overtly discriminatory pay policies, these statutes have not been able to redress the gender pay gap or occupational gender segregation due to narrow court interpretations, high bars of proof requirements, and deference to employer justifications. Stephanie Bornstein, *Equal Work*, 77 Md. L. Rev. 581, 602-09 (2018). Despite the protections afforded by these statutes, employers continue to justify unequal pay by claiming a gender neutral or "legitimate nondiscriminatory reason." *Id.* And discriminatory practices in large, national corporations have proved difficult to challenge despite clear evidence of a gender pay gap.

Consider the case of *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, women employees attempted to bring a class action lawsuit alleging that Wal-Mart violated Title VII by paying men more than women for the same work and by promoting men further and faster. While the case could have shined as a win for women working collectively to remedy unfair pay conditions, it exemplified a total failure of Title VII to rectify pay discrimination on behalf of a substantial group of women. Indeed, the women presented the Court with significant evidence going to the merits of the problem: that women employees were paid significantly less. Statistical evidence suggested a disparity between men and women employees in pay and promotion. *Id.* at 2555; *see also* Dr. Mary Dunn Baker*, Class Certification Statistical Analyses Post-Dukes,* 27 ABA J. Lab. & Emp. L. 471, 473 (2012) (noting that for his report, the plaintiffs' expert in the *Dukes* case estimated nationwide annual earnings regression equations for hourly and salaried employees separately and included a nationwide analysis of hourly pay rates to show that

actual female earnings (or hourly rates) fell short of the amounts predicted by his model that showed Wal-Mart exhibited an across-the-board pattern of paying women less than men). The women presented anecdotal reports of discrimination from more than 100 women employees. *Dukes*, 113 S. Ct. at 2556. Experts provided testimony regarding the biased culture and corporate practices of Wal-Mart. *Id.* at 2553. But the case fell into a procedural quagmire. The Supreme Court ultimately decertified the class – an indictment of the women's ability to share common experiences, not an assessment that the unequal pay practices did not abound.

### ii.    The Equal Pay Act stops short.

Similarly, the Equal Pay Act fails to remedy pervasive wage discrimination because it sidesteps a firm prohibition against unequal pay. Most notably, it provides employers an affirmative defense to unequal pay claims as long as the challenged salary policy is based on any "factor other than sex." Courts have interpreted this defense broadly, allowing pay disparities to be excused based on male worker's negotiation skills, employees' prior salaries, and "prevailing market rates," even if those factors are ultimately based on sex. *Wernsing v. Dep't of Human Servs., State of Ill.*, 427 F.3d 466, 470 (7th Cir. 2005); *Taylor v. White*, 321 F.3d 710, 719 (8th Cir. 2003).

While salary history inquiries are not the cause of the gender pay gap, they do "perpetuat[e] the historic pay inequity between male and female workers." Torie Abbott Watkins, *The Ghost of Salary Past: Why Salary History Inquiries Perpetuate the Gender Pay Gap & Should Be Ousted As A Factor Other Than Sex*, 103 Minn. L. Rev. 1041, 1044 (2018). And their legality is the subject of much case law under the Equal Pay Act. *Id.* at 1054. Recently, the Ninth Circuit Court of Appeals held "that employers are not

allowed to rely on prior pay to justify wage disparities for employees of the opposite sex"
and the Equal Pay Act's "any other factor other than sex" is limited to "legitimate job-
related factors" such as experience, educational background, ability, prior job
performance, effort, productivity, or regional cost of living. *Rizo v. Yovino*, 950 F.3d 1217,
1222, 1228 (9th Cir. 2020). This decision reversed earlier Ninth Circuit precedent finding
that an employer's policy of calculating salary based on prior salaries was a valid "factor
other than sex" and declining to consider the fact that because women make less than
men on average, their prior salaries were lower; thus minimum salary of new agents was
lower for women than men. *Kouba v. Allstate*, 691 F.2d 873 (9th Cir. 1982). While *Rizo*
has a pending petition for certiorari in the Supreme Court, it remains the only case law
explicitly prohibiting consideration of prior pay as an affirmative defense to a claim under
the Equal Pay Act. *See* 950 F.3d at 1226-27, petition for cert. sub nom., *Yovino v. Rizo*,
No. 19-1176 (filed March 24, 2020). Thus, in most courts, the text of the Equal Pay Act
can be effectively wielded to prohibit women from realizing gains in pay equity. *See*
*Wernsing*, 427 F.3d at 470 ("Wage patterns in some lines of work could be discriminatory,
but this is something to be proved rather than assumed.").

With the possibility of strict scrutiny, the ERA may succeed in shifting the burden
to the employer to show that sex was not a factor in determining salaries. This, in turn,
would allow for a more rigorous consideration of cultural and historical factors both within
the company and in society that contribute to sexually discriminatory outcomes in salary.

### iii.   Current law does not provide adequate accommodations for pregnant women.

The Pregnancy Discrimination Act prohibits workplace discrimination against
pregnant women and directs employers to make reasonable accommodations for

pregnant women. Despite the text of the law, it has not ended pregnancy discrimination. Nora Ellmann & Jocelyn Frye, *Efforts to Combat Pregnancy Discrimination: Confronting Racial, Ethnic, & Economic Bias*, CTR. FOR AM. PROGRESS (Nov. 2, 2018) https://www.americanprogress.org/issues/women/news/2018/11/02/460353/efforts-combat-pregnancy-discrimination/. Many employers fail to provide reasonable accommodations, and without a constitutional amendment upon which to base these protections, courts often interpret the Pregnancy Discrimination Act too narrowly and ignore the discriminatory effects of employer practices. Joanna L. Grossman & Deborah L. Brake, *Afterbirth: The Supreme Court's Ruling in Young v. UPS Leaves Many Questions Unanswered*, VERDICT (Apr. 20, 2015), https://verdict.justia.com/2015/04/20/afterbirth-the-supreme-courts-ruling-in-young-v-ups-leaves-many-questions-unanswered. Although the Pregnancy Discrimination Act amended Title VII, it does not require employers to provide minor workplace accommodations needed by pregnant employees, such as being allowed to take more frequent bathroom breaks. U.S. EEOC, *Fact Sheet: Pregnancy Discrimination*, No. EEOC-NVTA-0000-11, https://www.eeoc.gov/laws/guidance/fact-sheet-pregnancy-discrimination (Jan. 15, 1997). It is indisputable that the fundamental principle of equal rights on the basis of sex is violated when a policy harms only women.

Women in physically demanding jobs such as law enforcement, trucking, and stockrooms may seek light-duty assignments and job duty modifications at some point in their pregnancy. The language of the Pregnancy Discrimination Act requires equal treatment for pregnant women and those "similar in their ability or inability to work," setting forth the standard for comparison as ability to do the job. 42 U.S.C. § 2000e(k).

While the Pregnancy Discrimination Act affords working mothers significant protections, it is not without faults and loopholes. The seminal case highlighting the gaps that demonstrate the need for the ERA in the context of pregnancy discrimination is *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 135 S. Ct. 1338 (2015). The Supreme Court made clear that pregnancy is not a reason to discriminate, but failed to clarify what constitutes a "reasonable accommodation" for pregnant workers in various workplace contexts, and as Justice Kennedy wrote in his dissent, added confusion to the issue by interpreting the Act in a manner that conflates evidence of disparate impact with that of disparate treatment. 135 S. Ct. at 1368 (Kennedy, J., dissenting).

In *Young*, the employer allowed light duty accommodations for several employees experiencing various types of temporary disabilities and injuries but refused to provide the same accommodation to Young during her pregnancy. *Id.* at 1346-47. The Court held that while the Pregnancy Discrimination Act does not require an employer to provide the same work accommodations to an employee with pregnancy-related work limitations as to employees with similar, but non-pregnancy related, work limitations, courts must determine whether there are legitimate reasons for differences in an employer's policy that treats pregnant workers less favorably than non-pregnant workers with similar inabilities to work. *Id.* Ultimately, the Supreme Court remanded, in part, because not only did Young need to prove that there was discrimination, Young also had to prove that the discrimination was intentional, a nearly impossible standard in this context. Meanwhile, other forms of discrimination – such as those based on race and religion – need only prove the existence of discrimination, not that the discrimination is intentional.

Without the ERA, pregnant women and working mothers are not afforded the same constitutional foothold as other protected classes. The ERA may provide constitutional protections as a foundation to challenge policies that exclude individuals seeking pregnancy accommodations and would ensure equitable treatment for pregnant workers. The simple fact is this: so-called "pregnancy blind" policies that seek to apply equal rules to all workers regardless of needs or situation do not mean equal treatment for pregnant workers. Pregnancy is a condition unique to women that requires unique accommodations and considerations. Women need the constitutional strength of the ERA in order to seek legal protections necessary to truly place working mothers on equal footing with their male counterparts.

### iv.   The ERA will provide uniform, lasting protections from sex-based discrimination across the country.

There is currently some uncertainty in the standard of review applied by courts reviewing sex discrimination claims. *See supra* § III; *Nguyen v. Immigration & Naturalization Servs.*, 533 U.S. 53, 123 (2001) (failing to articulate the "exceedingly persuasive justification" requirement as a part of intermediate scrutiny). And any inconsistency in judicial review of sex-based classifications is further exacerbated by the impact that states' equal rights amendments—or lack thereof—have on this review.

Only nineteen states have added equal rights amendments to their state constitutions.[3] *See* Linda J. Wharton, *State Equal Rights Amendments Revisited: Evaluating Their Effectiveness in Advancing Protection Against Sex Discrimination,* 36

---

[3] Alaska Const. art. I, § 3; Colo. Const. art. II, § 29; Conn. Const. art. I, § 20; Del. Const. art. I, §.21; Fla. Const. art. I, § 2 Haw. Const. art. I, § 3; Ill. Const. art. I, § 18; Iowa Const. art. I, § 1; Md. Const. Decl. of Rts. art. 46; Mass. Const. pt. I, art. 1; Mont. Const. art. II, § 4; N.H. Const. pt. I, art. 2; N.M. Const. art. II, § 18; Pa. Const. art. I, § 28 ; Tex. Const. art. I, § 3a; Utah Const., art. IV, § 1; Va. Const. art. I, § 11; Wash. Const. art. XXXI, § 1; Wyo. Const. art. I, § 3.

Rutgers L.J. 1201, 1201-02, 1288-1293 (2005). An additional five states have explicit language prohibiting certain forms of sex discrimination in their constitutions.[4] *Id.* Of these, only eight states[5] apply the strict scrutiny standard of review to gender-based classifications. Paul Benjamin Linton, *State Equal Rights Amendments: Making a Difference or Making a Statement?,* 70 Temple L. Rev. 907, 915 (Fall 1997) (noting that two states, Pennsylvania and Washington, apply an even more rigorous—"absolutist"— standard of review; Colorado, Louisiana and Virginia follow the federal standard; other states have yet to determine the appropriate standard of review). Twenty-four states fail to provide state constitutional protection from sex-based discrimination. Thus, the ERA is crucial to ensuring that courts nationwide apply the same strict scrutiny standard to claims of sex discrimination—otherwise, the right to gender equality under the law may change based on where one lives.

Another example of inconsistency in the judicial application of legal protections from sex discrimination is in the context of the wage gap. As discussed above, prior salary is one of the factors that perpetuates the gender pay gap. And, as things stand currently, whether one's salary history may be used to justify pay disparity depends on where one lives. The Ninth Circuit does not allow prior salary to be used as an affirmative defense to a claim of pay discrimination. *Rizo*, 950 F.3d at 1226-27. The Sixth, Tenth, and Eleventh Circuits do not allow the use of previous salary alone to defend against a claim of pay disparity, but it may be considered as one of multiple factors. *See Perkins v. Rock-Tenn Servs., Inc.*, 700 F. App'x 452, 457 (6th Cir. 2017); *Riser v. QEP Energy*, 776 F.3d

---

[4] Cal. Const. art. I, §§ 8, 31(a); La. Const. art. I, § 3; Neb. Const. art. I, § 30; N.J. Const. art. I, para. 1 & art. X, para. 4; R.I. Const. art. I, § 2.
[5] California, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, New Hampshire, and Texas.

1191, 1199 (10th Cir. 2015); *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995). An Equal Pay Act claimant in the Seventh and Eighth circuits will have to overcome the view of these courts that salary history is a valid "factor other than sex" exception to the Equal Pay Act; indeed, these Circuits do not even require an employer to demonstrate an "acceptable business reason" for a wage gap between men and women. *See Wernsing*, 427 F.3d at 470 ("The disagreement between this circuit (plus the eighth) and those that require an 'acceptable business reason' is established, and we are not even slightly tempted to change sides."); *Taylor v. White*, 321 F.3d 710, 720 (8th Cir. 2003) ("To conduct a reasonableness inquiry into the actions of the employer . . . would, we believe, unnecessarily narrow the meaning of the phrase 'factor other than sex.'").

Nor does state legislation help to resolve these discrepancies. Some states, including California, Connecticut, Delaware, Hawaii, Massachusetts, New Jersey, New York, Maine, Oregon, Pennsylvania, and Vermont, have taken action to limit employer inquiries into past wages in order to alleviate the effects of past wage discrimination. [6] In Illinois,[7] North Carolina,[8] and Pennsylvania,[9] executive orders prevent state entities from inquiring into salary history. But these state laws are not comprehensive and do not necessarily prohibit the pervasive effects of historical wage discrimination that the Ninth Circuit cautioned against. *See Rizo*, 950 F.3d at 1229. The ERA, however, would allow a

---

[6] Cal. Lab. Code § 432.3(b) (2019); Conn. Gen. Stat. § 31-40z(b)(5) (2019); Del. Code Ann. tit. 19, § 709B (2017); Haw. Rev. Stat. § 378-2.3 (2019); Mass. Gen. Laws ch. 149 § 105A; N.J. Stat. Ann. § 34:6B-20 (2020); N.Y. Lab. Law § 194-a (2020); Me. Rev. Stat. tit. 5, § 4577 (2019); Or. Rev. Stat. Ann. § 659A.357 (2017); Vt. Stat. Ann. tit. 21, § 495m (2018).

[7] Ill. Exec. Order No. 2019-02 (Jan. 15, 2019), *available at* https://www2.illinois.gov/IISNews/19609-Executive_Order_2019-02.pdf.

[8] N.C. Exec. Order No. 93 (Apr. 2, 2019), *available at* https://files.nc.gov/governor/documents/files/EO93-_Prohibiting_the_Use_of_Salary_History_in_the_State_Hiring_Process.pdf.

[9] Exec. Order No. 2018-18-03 (Pa. June 6, 2018), *available at* https://www.governor.pa.gov/executive-order-2018-18-03-equal-pay-for-employees-of-the-commonwealth.

more rigorous standard of review to apply to claims of wage discrimination based on sex, and, if needed, provide the constitutional basis to pass stronger protections for pay equality. *See supra* § III.

Consider also the discrimination implicit in sales taxation for menstrual products. Thirty-five states collect sales tax on such products, either as "luxury" items or in spite of exemptions for other types of medical necessities. Jennifer Weiss-Wolf, *U.S. Policymaking to Address Menstruation: Advancing an Equity Agenda*, 25 Wm. & Mary J. Race, Gender & Soc. Just. 493, 499 (2019). By doing so, these states discriminate by levying "a tax on a product solely used by biological women." Victoria Hartman, *End the Bloody Taxation: Seeing Red on the Unconstitutional Tax on Tampons*, 112 Nw. U. L. Rev. 313, 348 (2017). As such, commentators have argued that taxes on menstrual products should not survive constitutional scrutiny. *Id.*at 351-53. However, not all courts agree. *See Rowitz v. McClain*, 138 N.E.3d 1241, 1267 (Ohio App. 10th Dist. 2019). The ERA would increase uniformity by providing a consistent standard of review for such claims.

## V.    CONCLUSION

For these reasons, the Court should deny the Archivist's Motion to Dismiss and declare, as the Plaintiff States seek, that the ERA is valid and part of the Constitution within the meaning of Article V.

Dated: <u>June 29, 2020</u>                        Respectfully submitted,


                                                 **BAKER DONELSON BEARMAN**
                                                 **CALDWELL & BERKOWITZ, PC**

                                                 BY:    */s/ Elizabeth J. Cappiello*

Elizabeth J. Cappiello (DC Bar No.:
1018161)
Baker Donelson Bearman
Caldwell & Berkowitz, PC
901 K Street, N.W., Suite 900
Washington, DC 20001
Tel: 202-508-3400
ecappiello@bakerdonelson.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June, 2020, the foregoing Consent

Motion for Leave to File Brief Amicus Curiae was electronically filed and served on all

counsel of record via the Court's CM/ECF e-filing system.

*/s/ Elizabeth J. Cappiello*
Elizabeth J. Cappiello

*Attorney for Amici Curiae*

## APPENDIX A

## CONSTITUTIONS CONTAINING EQUALITY OR
## NO DISCRIMINATION ON BASIS OF SEX CLAUSES

## COMPILED BY SOUTHERN LEGAL COUNSEL
## JUNE 25, 2020

**Afghanistan**
Any kind of discrimination and distinction between citizens of Afghanistan shall be forbidden. The citizens of Afghanistan, man and woman, have equal rights and duties before the law.
Const. of the Islamic Republic of Afghanistan, 2004, Ch. II, Art. 22.

**Albania**
No one may be unjustly discriminated against for reasons such as gender, race, religion, ethnicity, language, political, religious or philosophical beliefs, economic condition, education, social status, or parentage.
Kushtetuta e Shqipërisë [Const.] 1998 rev. 2016, Pt. 2, Ch. I, Art. 18 ¶ 2 (Albania).

**Algeria**
All citizens shall be equal before the law. No pretext for discrimination on the basis of birth, race, gender, opinion or any other personal or social condition or situation shall be admissible.
Const. of People's Democratic Republic of Algeria,1989 reinst., 1996 rev. 2016, Tit. 1, Ch. IV, Art. 32.

**Andorra**
All persons are equal before the law. No one may be discriminated against on grounds of birth, race, sex, origin, religion, opinions or any other personal or social condition.
Constitució d'Andorra [Const.] 1993, Tit. II, Ch. I, Art. 6 ¶ 1.

**Angola**
No-one may be discriminated against, privileged, deprived of any right or exempted from any duty on the basis of ancestry, sex, race, ethnicity, colour, disability, language, place of birth, religion, political, ideological or philosophical beliefs, level of education or economic, social or professional status.
Const. of Republic of Angola, 2010, Tit. II, Ch. I, Art. 23, Point 2.

**Antigua and Barbuda**
Whereas every person in Antigua and Barbuda is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, regardless of race, place of origin, political opinions or affiliations, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely-

a.  life, liberty, security of the person, the enjoyment of property and the protection of the law;

b. freedom of conscience, of expression (including freedom of the press) and of peaceful assembly and association; and

c. protection for his family life, his personal privacy, the privacy of his home and other property and from deprivation of property without fair compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to the aforesaid rights and freedoms, subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.

Const. Order of Antigua & Barbuda, 1981, Ch. II, § 3.

3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, place of origin, political opinions or affiliations, colour, creed, or sex whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages that are not accorded to persons of another such description.

5. Nothing contained in any law shall be held to be inconsistent with or in contravention of subsection (1) of this section to the extent that it makes provision with respect to qualifications (not being qualifications specifically relating to race, place of origin, political opinions or affiliations, colour, creed or sex) for service as a public officer or as a member of a disciplined force or for the service of a local government authority or a body corporate established by any law for public purposes.

Const. Order of Antigua & Barbuda, 1981, Ch. II, § 14, Subsecs. 3 & 5.

## Armenia

Any discrimination based on sex, race, skin color, ethnic or social origin, genetic features, language, religion, worldview, political or any other views, belonging to a national minority, property status, birth, disability, age, or other personal or social circumstances shall be prohibited.

Const. of Republic of Armenia, 1995 rev. 2015, Ch. 2, Art. 29.

Women and men shall have equal rights.

Const. of Republic of Armenia, 1995 rev. 2015, Ch. 2, Art. 30.

## Austria

1. All nationals are equal before the law. Privileges based upon birth, sex, estate, class or religion are excluded. No one shall be discriminated against because of his disability. The Republic (Federation, Laender and municipalities) commits itself to ensuring the equal treatment of disabled and non-disabled persons in all spheres of everyday life.

2. The Federation, Laender and municipalities subscribe to the de-facto equality of men and women. Measures to promote factual equality of women and men, particularly by eliminating actually existing inequalities, are admissible.

Österreichische Bundesverfassung [Const.] 1920 reinst. 1945, rev. 2013, Ch. 1, § A, Art. 7 ¶¶ 1 & 2 (Austria).

### Azerbaijan

II. Men and women have equal rights and freedoms.

III. Everyone has equal rights and freedoms irrespective of race, ethnicity, religion, sex, origin, property status, social position, convictions, political party, trade union organization and social unity affiliation. Limitations or recognition of rights and freedoms because of race, ethnicity, social status, language, origin, convictions and religion are prohibited.

Azerbaycan konstitusiyası [Const.] 1995 rev. 2016, 2d Pt., Ch. III, Art. 25 ¶¶ II & III (Azerbaijan).

### Bahrain

The State guarantees reconciling the duties of women towards the family with their work in society, and their equality with men in political, social, cultural, and economic spheres without breaching the provisions of Islamic canon law (Shari'a).

Const. of Kingdom of Bahrain, 2002 rev. 2017, Ch. II, Art. 5 ¶ b.

People are equal in human dignity, and citizens are equal before the law in public rights and duties. There shall be no discrimination among them on the basis of sex, origin, language, religion or creed.

Const. of Kingdom of Bahrain, 2002 rev. 2017, Ch. III, Art. 18.

### Bangladesh

1.The State shall not discriminate against any citizen on ground only of religion, race, caste, sex or place of birth.

2.Women shall have equal rights with men in all spheres of the State and of public life.

3.No citizen shall, on grounds only of religion, race, caste, sex or place of birth be subjected to any disability, liability, restriction or condition with regard to access to any place of public entertainment or resort, or admission to any educational institution.

4.Nothing in this article shall prevent the State from making special provision in favour of women or children or for the advancement of any backward section of citizens.

Const. of People's Republic of Bangladesh, 1972 reinst. 1986 rev. 2014, Pt. III ¶ 28, Subpara. 1.

No citizen shall, on grounds only of religion, race, caste, sex or place of birth, be ineligible for, or discriminated against in respect of, any employment or office in the service of the Republic.

Const. of People's Republic of Bangladesh, 1972 reinst. 1986 rev. 2014, Pt. III ¶ 29, Subpara. 2.

### Barbados

Whereas every person in Barbados is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely-

a. life, liberty and security of the person;

28

b.protection for the privacy of his home and other property and from deprivation of property without compensation;

c.the protection of the law; and

d.freedom of conscience, of expression and of assembly and association, the following provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.

Const. of Barbados, 1966 rev. 2007, Ch. III, § 11.

## Belgium

Equality between women and men is guaranteed.

Belgische Grondwet [Const.] 1831 rev. 2014, Tit. II, Art. 10 (Belgium).

The law, federate law or rule referred to in Article 134 guarantees that women and men may equally exercise their rights and freedoms, and in particular promotes their equal access to elective and public mandates.

The Council of Ministers and the Governments of the Communities and the Regions include both women and men.

The law, federate law or rule referred to in Article 134 provides for women and men to sit on the permanent deputations of the provincial councils, the colleges of the burgomasters and aldermen, the councils and permanent committees of the public centres for social welfare and on the executives of any other inter-provincial, supra-municipal, inter-municipal or intra-municipal territorial body.

The preceding paragraph does not apply when the law, federate law or rule referred to in Article 134 provides for the direct election of the members of the permanent deputations of the provincial councils, of aldermen, of the members of the councils and permanent committees of the social welfare centres or of the members of the executives of any other inter-provincial, supra-municipal, inter-municipal or intra-municipal territorial body.

Belgische Grondwet [Const.] 1831 rev. 2014, Tit. II, Art. 11BIS (Belgium).

## Belize

WHEREAS the people of Belize- […]

e. require policies of state which protect and safeguard the unity, freedom, sovereignty and territorial integrity of Belize; which eliminate economic and social privilege and disparity among the citizens of Belize whether by race, ethnicity, colour, creed, disability or sex; which ensures gender equality; which protect the rights of the individual to life, liberty, basic education, basic health, the right to vote in elections, the right to work and the pursuit of happiness; which protect the identity, dignity and social and cultural values of Belizeans, including Belize's indigenous peoples; which preserve the right of the individual to the ownership of private property and the right to operate private businesses; which prohibit the exploitation of man by man or by the state; which ensure a just system of social security and welfare; which protect the environment; which promote international peace, security and co-operation among nations, the establishment of a just and equitable

international economic and social order in the world with respect for international law and treaty obligations in the dealings among nations;
Const. of Belize, 1981 rev. 2011, Pmbl.

Whereas every person in Belize is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely—
a. life, liberty, security of the person, and the protection of the law;
b. freedom of conscience, of expression and of assembly and association;
c. protection for his family life, his personal privacy, the privacy of his home and other property and recognition of his human dignity; and
d. protection from arbitrary deprivation of property, the provisions of this Part shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any person does not prejudice the rights and freedoms of others or the public interest.
Const. of Belize, 1981 rev. 2011, Pt. II, § 3.

3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by sex, race, place of origin, political opinions, colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
5. Nothing contained in any law shall be held to be inconsistent with or in contravention of subsection (1) of this section to the extent that it makes provision with respect to standards or qualifications (not being standards or qualifications specifically relating to sex, race, place of origin, political opinions, colour or creed) to be required of any person who is appointed to or to act in any office or employment.
Const. of Belize, 1981 rev. 2011, Pt. II, § 16, Subsecs. 3 & 5.

**Benin**
The State shall assure to everyone equality before the law without distinction of origin, of race, of sex, of religion, of political opinion or of social position.
Men and women are equal under the law. The State shall protect the family and particularly the mother and child. It shall take care of handicapped and aged persons.
Const. of People's Republic of Benin, 1990, Tit. II, Art. 26.

**Bhutan**
All persons are equal before the law and are entitled to equal and effective protection of the law and shall not be discriminated against on the grounds of race, sex, language, religion, politics or other status.
འབྲུག་གི་རྩ་ཁྲིམས་ཆེན་མོ་ [Const.] 2008, Art. 7, § 15 (Bhutan).

17. The State shall endeavour to take appropriate measures to eliminate all forms of discrimination and exploitation against women including trafficking, prostitution, abuse, violence, harassment and intimidation at work in both public and private spheres.

18. The State shall endeavour to take appropriate measures to ensure that children are protected against all forms of discrimination and exploitation including trafficking, prostitution, abuse, violence, degrading treatment and economic exploitation.
འབྲུག་གི་རྩ་ཁྲིམས་ཆེན་མོ [Const.] 2008, Art. 9, § 17, 18 (Bhutan).

## Bolivia
The State prohibits and punishes all forms of discrimination based on sex, color, age, sexual orientation, gender identity, origin, culture, nationality, citizenship, language, religious belief, ideology, political affiliation or philosophy, civil status, economic or social condition, type of occupation, level of education, disability, pregnancy, and any other discrimination that attempts to or results in the annulment of or harm to the equal recognition, enjoyment or exercise of the rights of all people.
Constitución Política del Estado [Const.] 2009, Pt. I, Tit. II, Ch. I, Art. 14 ¶ II (Bolivia).

## Bosnia and Herzegovina
The enjoyment of the rights and freedoms provided for in this Article or in the international agreements listed in Annex I to this Constitution shall be secured to all persons in Bosnia and Herzegovina without discrimination on any ground such as sex, race, color, language, religion, political or other opinion, national or social origin, association with a national minority, property, birth or other status.
Ustav Bosne i Hertcegovine [Const.] 1995 rev. 2009, Art. II ¶ 4 (Bosnia & Herzegovina).

## Botswana
Whereas every person in Botswana is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his or her race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest to each and all of the following, namely—
a.  life, liberty, security of the person and the protection of the law;
b.  freedom of conscience, of expression and of assembly and association; and
c.  protection for the privacy of his or her home and other property and from deprivation of property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.
Const. of Republic of Botswana, 1966 rev. 2016, Ch. II, § 3.
In this section, the expression "discriminatory" means affording different treatment to different persons, attributable wholly or mainly to their respective descriptions by race, tribe, place of origin, political opinions, colour, creed or sex whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Republic of Botswana, 1966 rev. 2016, Ch. II, § 15, Subsec. 3.


## Brazil

31

The fundamental objectives of the Federative Republic of Brazil are: […] IV. to promote the well-being of all, without prejudice as to origin, race, sex, color, age and any other forms of discrimination.

Constituição da República Federativa do Brasil [Const.] 1988 rev. 2017, Tit. I, Art. 3, Subpara. IV (Brazil).

Everyone is equal before the law, with no distinction whatsoever, guaranteeing to Brazilians and foreigners residing in the Country the inviolability of the rights to life, liberty, equality, security and property, on the following terms:

I. men and women have equal rights and duties under the terms of this Constitution;

Constituição da República Federativa do Brasil [Const.] 1988 rev. 2017, Tit. II, Ch. I, Art. 5, Subpara. I (Brazil).

## Bulgaria

All citizens* shall be equal before the law. There shall be no privileges or restriction of rights on the grounds of race, national or social origin, ethnic self-identity, sex, religion, education, opinion, political affiliation, personal or social status or property status.

* The term "citizens" refers to all individuals to whom this Constitution applies.

Конституция на Република България [Const.] 1991 rev. 2015, Ch. I, Art. 6 ¶ 2 (Bulgaria).

## Burkina Faso

Discrimination of all sorts, notably those founded on race, ethnicity, region, color, sex, language, religion, caste, political opinions, wealth and birth, are prohibited.

Const. of Burkina Faso, 1991 rev. 2015, Tit. I, Ch. I, Art. 1.

## Burundi

All Burundian people are equal in merit and in dignity. All citizens enjoy the same rights and have the same protection of the law. No Burundian will be excluded from the social, political, or economic life due to their race, language, religion, sex, or ethnic origin.

Const. of Republic of Burundi, 2008, Tit. I, 2, Art. 13.

No one may be the target of discrimination based on, notably: origin, race, ethnicity, sex, color, language, social situation, religious, philosophical, or political belief, physical or mental handicap, HIV/AIDS status or having any other incurable illness.

Const. of Republic of Burundi, 2008, Tit. II, 1, Art. 22.

## Cambodia

Khmer citizens shall be equal before the law, enjoying the same rights and freedom and obligations regardless of race, color, sex, language, religious belief, political tendency, national origin, social status, wealth or other status. The exercise of personal rights and freedom by any individual shall not adversely affect the rights and freedom of others. The exercise of such rights and freedom shall be in accordance with the law.

Const. of Kingdom of Cambodia, 1993 rev. 2008, Ch. III, Art. 31.

All forms of discrimination against women shall be abolished.

The exploitation of women in employment is prohibited.

Men and women are equal in all fields especially with respect to marriage and family matters.

Marriage shall be conducted according to law, based on the principle of mutual consent between one husband and one wife.
Const. of Kingdom of Cambodia, 1993 rev. 2008, Ch. III, Art. 45.

## Cameroon
Declare that the human person, without distinction as to race, religion, sex or belief, possesses inalienable and sacred rights;
Affirm our attachment to the fundamental freedoms enshrined in the Universal Declaration of Human Rights, the Charter of United Nations and the African Charter on Human and Peoples' Rights, and all duly ratified international conventions relating thereto, in particular, to the following principles: […]
25.the State shall guarantee all citizens of either sex the rights and freedoms set forth in the Preamble of the Constitution.
Const. of Republic of Cameroon, 1972 rev. 2008, Pmbl.

## Canada
Every individual is equal before and under the law and has the right to the equal protection and equal benefit of the law without discrimination and, in particular, without discrimination based on race, national or ethnic origin, colour, religion, sex, age or mental or physical disability.
Const. du Canada, 1867 rev. 2011, Const. Act 1982, Pt. I, F, § 15, Subsec. 1.
Notwithstanding anything in this Charter, the rights and freedoms referred to in it are guaranteed equally to male and female persons.
Const. du Canada, 1867 rev. 2011, Const. Act 1982, Pt. I, J, § 28.
Notwithstanding any other provision of this Act, the aboriginal and treaty rights referred to in subsection (1) are guaranteed equally to male and female persons.
Const. du Canada, 1867 rev. 2011, Const. Act 1982, Pt. II, § 35, Subsec. 4.

## Cape Verde
The Republic of Cape Verde recognizes the equality of all citizens before the law, without distinction as to social origin or economic situation, race, sex, religion, political or ideological convictions, and social conditions, and assures the full exercise by all citizens of fundamental liberties.
Const. of Republic of Cape Verde, 1980 rev. 1992, Pt. I, Tit. I, Art. 1 ¶ 2.
All citizens shall have equal social status and shall be equal before the law, without privilege, benefit, or prejudice, and may not be deprived of any rights or exempt from any duty by reason of race, sex, ancestry, language, origin, religion, social and economic condition, or political or ideological conviction.
Const. of Republic of Cape Verde, 1980 rev. 1992, Pt. II, Tit. I, Art. 22.

## Central African Republic
All human beings are equal before the law without distinction of race, of ethnic origin, of region, of sex, of religion, of political affiliation and of social position.
The State assures the reinforced protection of the rights of the minorities, of the autochthonous peoples, and of handicapped persons.

The law guarantees to the man and to the woman equal rights in all the domains. In the Central African Republic one is neither subject [to] nor [has] a privilege of place of birth, of person or of family.
Const. of Central African Republic, 2016, Tit. I, Art. 6.

**Chad**
Chadians of both sexes have the same rights and the same duties. They are equal before the law.
Const. de la République du Tchad, 2018, Tit. II, Art. 13 (Chad).
The State assures to all equality before the law without distinction of origin, of race, of sex, of religion, of political opinion or of social position.
 It has the duty to ensure the elimination of all forms of discrimination with regard to women and to assure the protection of their rights in all the domains of private and public life.
Const. de la République du Tchad, 2018, Tit. II, Art. 14 (Chad).

**Chile**
The Constitution guarantees all persons: […]
2.Equality before the law. In Chile there are no privilege persons or groups. In Chile there are no slaves, and any that sets foot on its territory will become free. Men and women are equal before the law.
•Neither the law nor any authority whatsoever may establish arbitrary differences;
Const. of Republic of Chile, 1980 rev. 2015, Ch. III, Art. 19, No. 2.

**People's Republic of China**
Women in the People's Republic of China enjoy equal rights with men in all spheres of life, political, economic, cultural and social, and family life.
The state protects the rights and interests of women, applies the principle of equal pay for equal work for men and women alike and trains and selects cadres from among women.
中華人民共和國憲法 [Const.] 1982 rev. 2018, Ch. II, Art. 48 (People's Republic of China).

**Colombia**
All individuals are born free and equal before the law, shall receive equal protection and treatment from the authorities, and shall enjoy the same rights, freedoms, and opportunities without any discrimination on account of gender, race, national or family origin, language, religion, political opinion, or philosophy.
Const. Política de Colombia, 1991 rev. 2015, Tit. II, Ch. I, Art. 13.
Women and men have equal rights and opportunities. Women cannot be subjected to any type of discrimination. During their periods of pregnancy and following delivery, women shall benefit from the special assistance and protection of the State and shall receive from the latter food subsidies if they should thereafter find themselves unemployed or abandoned.
Const. Política de Colombia, 1991 rev. 2015, Tit. II, Ch. II, Art. 43.

**Comoros**

The Union of the Comoros equally recognizes the equality of all citizens before the law, without distinction of race, sex, religion, political belief, and it assures all citizens the full enjoyment of fundamental freedoms.
Const. of the Comoros, 2018, Tit. I, Ch. I, Art. 2.

**Democratic Republic of the Congo**
The public powers see to the elimination of any form of discrimination concerning women and assure the protection and the promotion of their rights.
They take, in all the domains, notably in the civil, political, economic, social and cultural domains, all the measures appropriate to assure the total realization and full participation of women in the development of the Nation.
They take measures to struggle against all forms of violence made against women in public and in private life.
Women have the right to an equitable representation within the national, provincial and local institutions. The State guarantees the implementation of man-woman parity in these said institutions.
The law establishes the modalities of application of these rights
Const. of Democratic Republic of Congo, 2005 rev. 2011, Tit. II, Ch. 1, Art. 14.

**Republic of the Congo**
The woman has the same rights as the man.
The law guarantees parity and assures the promotion as well as the representativeness of women in all political, elective and administrative functions.
Const. of Republic of Congo, 2015, Tit. II, Sub-tit. I, Art. 17.

**Côte d'Ivoire**
No one may be privileged or discriminated against by reason of their race, their ethnicity, their clan, their tribe, their skin color, their sex, their region, their social origin, their religion or belief, their opinion, their fortune, their difference in culture or language, their social status or their physical or mental state.
Const. of Republic of Côte d'Ivoire, 2016, Tit. I, Ch. 1, Art. 4.

**Croatia**
Freedom, equal rights, national equality and equality of genders, love of peace, social justice, respect for human rights, inviolability of ownership, conservation of nature and the environment, the rule of law, and a democratic multiparty system are the highest values of the constitutional order of the Republic of Croatia and the ground for interpretation of the Constitution.
Ustav Republike Hrvatske [Const.] 1991 rev. 2013, II, Art. 3 (Croatia).
Everyone in the Republic of Croatia shall enjoy rights and freedoms, regardless of race, color, gender, language, religion, political or other belief, national or social origin, property, birth, education, social status or other characteristics.
Ustav Republike Hrvatske [Const.] 1991 rev. 2013, III, 1, Art. 14 (Croatia).
**Cuba**
All people are equal before the law, receive the same protection and treatment from the authorities, and enjoy the same rights, liberties, and opportunities, without any

discrimination for reasons of sex, gender, sexual orientation, gender identity, age, ethnic origin, skin color, religious belief, disability, national or territorial origin, or any other personal condition or circumstance that implies a distinction injurious to human dignity.

All people have the right to enjoy the same public spaces and service facilities. Likewise, they receive equal salary for equal work, with no discrimination whatsoever. The violation of this principle is proscribed and is sanctioned by law.

Const. of Republic of Cuba, 2019, Tit. V, Ch. I, Art. 42.

Women and men have equal rights and responsibilities in the economic, political, cultural, occupational, social, and familial domains, as well as in any other domain. The State guarantees that both will be offered the same opportunities and possibilities. The State encourages the holistic development of women and their full social participation. It ensures the exercise of their sexual and reproductive rights, protects them from gender-based violence in all of its forms and in all spaces, and creates the institutional and legal mechanisms to do so.

Const. of Republic of Cuba, 2019, Tit. V, Ch. I, Art. 43.

## Cyprus

Every person shall enjoy all the rights and liberties provided for in this Constitution without any direct or indirect discrimination against any person on the ground of his community, race, religion, language, sex, political or other convictions, national or social descent, birth, colour, wealth, social class, or on any ground whatsoever, unless there is express provision to the contrary in this Constitution.

Const. of Republic of Cyprus, 1960 rev. 2013, Pt. II, Art. 28 ¶ 2.

## Czech Republic

Everyone is guaranteed the enjoyment of her fundamental rights and basic freedoms without regard to gender, race, color of skin, language, faith and religion, political or other conviction, national or social origin, membership in a national or ethnic minority, property, birth, or other status.

Ústava České republiky [Const.] 1993 rev. 2013, Charter of Fundamental Rights & Basic Freedoms, Ch. 1, Art. 3 ¶ 1 (Czech Republic).

## Djibouti

The Republic of Djibouti as composed of the entirety of the persons that it recognizes as members and who have accepted the duties, without distinction of language, of race, of sex or of religion.

Const. of Djibouti, 1992 rev. 2010, Tit. I, Art. 3.

## Dominica

Whereas every person in Dominica is entitled to the fundamental rights and freedoms, that is to say, the right, whatever his race, place of origins, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely—

a. life, liberty, security of the person and the protection of the law;
b. freedom of conscience, of expression and of assembly and association; and
c. protection for the privacy of his home and other property and from deprivation of

property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any person does not prejudice the rights and freedoms of others or the public interest.
Const. of Commonwealth of Dominica, 1978 rev. 2014, Ch. 1, § 1.

3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by sex, race, place of origin, political opinions, colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.

5. Nothing contained in any law shall be held to be inconsistent with or in contravention of subsection (1) of this section to the extent that it makes provision with respect to standards or qualifications (not being standards or qualifications specifically relating to sex, race, place of origin, political opinions, color or creed) to be required of any person who is appointed to or to act in any office or employment.
Const. of Commonwealth of Dominica, 1978 rev. 2014, Ch. 1, § 13, Subsecs. 3 & 5.

## Dominican Republic

All people are born free and equal before the law, receive the same protection and treatment from institutions, authorities, and other people and enjoy the same rights liberties and opportunities, without any discrimination for reasons of gender, color, age, disability, nationality, family ties, language, religions, political or philosophical opinion, social or personal condition. Consequently:

4.Women and men are equal before the law. Any act that has the objective or result of diminishing or annulling the recognition, enjoyment or exercise of fundamental rights of woman and men in conditions of equality is prohibited.

5.The State should promote and guarantee the equal participation of women and men in candidate lists to the offices of popular election for the instances of guidance and decision in the public sphere, in the administration of justice, and in the State-controlled bodies.
Const. of Dominican Republic, 2015, Tit. II, Ch. I, § I, Art. 39, Nos. 4 & 5.

## Ecuador

The exercise of rights shall be governed by the following principles: […]

2.No one shall be discriminated against for reasons of ethnic belonging, place of birth, age, sex, gender identity, cultural identity, civil status, language, religion, ideology, political affiliation, legal record, socio-economic condition, migratory status, sexual orientation, health status, HIV carrier, disability, physical difference or any other distinguishing feature, whether personal or collective, temporary or permanent, which might be aimed at or result in the diminishment or annulment of recognition, enjoyment or exercise of rights. All forms of discrimination are punishable by law.
Const. of Republic of Ecuador, 2008 rev. 2015, Tit. II, Ch. 1, Art. 11, 2.

The State shall guarantee the enforcement of these collective rights without any discrimination, in conditions of equality and equity between men and women.
Const. of Republic of Ecuador, 2008 rev. 2015, Tit. II, Ch. 4, Art. 37.

**Egypt**

The state commits to achieving equality between women and men in all civil, political, economic, social, and cultural rights in accordance with the provisions of this Constitution.
Const. of Arab Republic of Egypt, 2014 rev. 2019, Ch. 2, § 1, Art. 11.
Citizens are equal before the law, possess equal rights and public duties, and may not be discriminated against on the basis of religion, belief, sex, origin, race, color, language, disability, social class, political or geographical affiliation, or for any other reason.
Const. of Arab Republic of Egypt, 2014 rev. 2019, Ch. 3, Art. 53.

**El Salvador**

All persons are equal before the law. For the enjoyment of civil rights, no restrictions shall be established that are based on differences of nationality, race, sex or religion.
Const. of Republic of El Salvador, 1983 rev. 2014, Tit. II, Ch. 1, First §, Art. 3.

**Equatorial Guinea**

The fundamentals of the Equatoguinean society are: […]
c. The recognition of equality between men and women.
Const. of Republic of Equatorial Guinea, 1991 rev. 2012, First Tit., Art. 5, c.
1.Every citizen enjoys the following rights and freedoms. […]
c. To equality before the law. The woman, irrespective of her civil status, shall have the same rights and opportunities as men in all aspects of public, private and familiar life, in civil, political, economic, social and cultural life.
Const. of Republic of Equatorial Guinea, 1991 rev. 2012, First Tit., Art. 13, 1, c.
Any act of partiality or discrimination duly found on the basis of tribe, ethnicity, gender, religion, social, political or other analogous motives is punishable by law.
Const. of Republic of Equatorial Guinea, 1991 rev. 2012, First Tit., Art. 15, 1.

**Eritrea**

No person may be discriminated against on account of race, ethnic origin, language, color, gender, religion, disability, age, political view, or social or economic status or any other improper factors.
Const. of Eritrea, 1997, Ch. III, Art. 14, 2.

**Estonia**

Everyone is equal before the law. No one shall be discriminated against on the basis of nationality, race, color, sex, language, origin, religion, political or other opinion, property or social status, or on other grounds.
Const. of Republic of Estonia, 1992 rev. 2015, Ch. II, Art. 12.

**Ethiopia**

All persons are equal before the law and are entitled without any discrimination to the equal protection of the law. In this respect, the law shall guarantee to all persons equal and effective protection without discrimination on grounds of race, nation, nationality, or other social origin, colour, sex, language, religion, political or other opinion, property, birth or other status.

Const. of Federal Democratic Republic of Ethiopia, 1994, Ch. 3, Pt. 1, Art. 25.

**Fiji**
A person must not be unfairly discriminated against, directly or indirectly on the grounds of his or her-
a. actual or supposed personal characteristics or circumstances, including race, culture, ethnic or social origin, colour, place of origin, sex, gender, sexual orientation, gender identity and expression, birth, primary language, economic or social or health status, disability, age, religion, conscience, marital status or pregnancy; or
Const. of Republic of Fiji, 2013, Ch. 2, § 26, Subsec. 3, a.

**Finland**
No one shall, without an acceptable reason, be treated differently from other persons on the ground of sex, age, origin, language, religion, conviction, opinion, health, disability or other reason that concerns his or her person. […]
Equality of the sexes is promoted in societal activity and working life, especially in the determination of pay and the other terms of employment, as provided in more detail by an Act.
Suomen perustuslaki [Const.] 1999 rev. 2011, Ch. 2, § 6.

**France**
The law guarantees women equal rights to those of men in all spheres.
Const. of Fifth Republic, 1958 rev. 2008, Pmbl. (France).

**Gabon**
The Gabonese Republic assures equality for all citizens before the law, making no distinction of origin, race, sex, opinion or religion
Const. of Gabonese Republic, 1991 rev. 2011, First Tit., Art. 2 (Gabon).

**The Gambia**
Every person in The Gambia, whatever his or her race, colour, gender, language, religion, political or other opinion, national or social origin, property, birth or other status, shall be entitled to the fundamental human rights and freedoms of the individual contained in this Chapter, but subject to respect for the rights and freedoms of others and for the public interest.
Const. of Republic of The Gambia, 1996 rev. 2018, Ch. IV, § 17, Subsec. 2.
1. Women shall be accorded full and equal dignity of the person with men.
2. Women shall have the right to equal treatment with men, including equal opportunities in political, economic and social activities.
Const. of Republic of The Gambia, 1996 rev. 2018, Ch. IV, § 28, Subsecs. 1 & 2.
In this section, the expression "discrimination" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, colour, gender, language, religion, political or other opinion, national or social origin, property, birth or other status whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made

subject, or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Republic of The Gambia, 1996 rev. 2018, Ch. IV, § 33, Subsec. 4.

**Georgia**
1. All persons are equal before the law. Any discrimination on the grounds of race, colour, sex, origin, ethnicity, language, religion, political or other views, social affiliation, property or titular status, place of residence, or on any other grounds shall be prohibited. […]
3. The State shall provide equal rights and opportunities for men and women. The State shall take special measures to ensure the essential equality of men and women and to eliminate inequality.
Const. of Georgia, 1995 rev. 2018, Ch. 2, Art. 11 ¶¶ 1 & 3.

**Germany**
No person shall be favoured or disfavoured because of sex, parentage, race, language, homeland and origin, faith, or religious or political opinions. No person shall be disfavoured because of disability.
Grundgesetz für die Bundesrepublik Deutschland [Const.] 1949 rev. 2014, I, Art. 3 ¶ 3 (Germany).

**Ghana**
Every person in Ghana, whatever his race, place of origin, political opinion, colour, religion, creed or gender shall be entitled to the fundamental human rights and freedoms of the individual contained in this Chapter but subject to respect for the rights and freedoms of others and for the public interest.
Const. of Republic of Ghana, 1992 rev. 1996, Ch. 5, Pt. I, Art. 12, Cl. 2.
2. A person shall not be discriminated against on grounds of gender, race, colour, ethnic origin, religion, creed or social or economic status.
3. For the purposes of this article, "discriminate" means to give different treatment to different persons attributable only or mainly to their respective descriptions by raw, place of origin, political opinions, colour, gender, occupation, religion or creed, whereby persons of one description are subjected to disabilities or restrictions to which persons of another description are not made subject or are granted privileges or advantages which are not granted to persons of another description.
Const. of Republic of Ghana, 1992 rev. 1996, Ch. 5, Pt. I, Art. 17, Cls. 2 & 3.

**Greece**
Greek men and women have equal rights and equal obligations.
Σύνταγμα της Ελλάδας [Const.] 1975 rev. 2008, Pt. 2, Art. 4 ¶ 2 (Greece).

**Grenada**
Whereas every person in Grenada is entitled to the fundamental rights and freedoms, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely-

a.  life,  liberty,  security  of  the  person  and  the  protection  of  the  law;
b.  freedom  of  conscience,  of  expression  and  of  assembly  and  association;
c.  protection  for  the  privacy  of  his  home  and  other  property  and  from  deprivation  of
property without compensation; and
d. the right to work, the provisions of the Chapter shall have effect for the purpose of
affording protection to those rights and freedoms subject to such limitations of that
protection as are contained in these provisions, being limitations designed to ensure that
the enjoyment of the said rights and freedoms by any person does not prejudice the rights
and freedoms of others or the public interest.
Const. of Grenada, 1973 reinst. 1991, rev. 1992, Ch. I, § 1.

## Guatemala

In Guatemala[,] all [of the] human beings are free and equal in dignity and rights. The
man and the woman, whatever their civil status may be, have equal opportunities and
responsibilities. No person can be subject to servitude or to another condition that
diminishes his or her dignity. The human beings must exercise [guardar] brotherly
behavior among them.
Const. of Republic of Guatemala, 1985 rev. 1993, Tit. II, Ch. 1, Art. 4.

## Guinea-Bissau

All citizens are equal before the law, enjoy the same rights and are subjected to the same
duties, without distinction of race, sex, social status, social, intellectual or cultural level,
religious belief or philosophical conviction.
Const. of Republic of Guinea-Bissau, 1984 rev. 1996, Pt. II, Art. 24.
Men and women are equal before the law in all aspects of political, economic, social and
cultural life.
Const. of Republic of Guinea-Bissau, 1984 rev. 1996, Pt. II, Art. 25.

## Guyana

1. Subject to the provisions of this article-
a. no law shall make any provision that is discriminatory either of itself or in its effect; and
b. no person shall be treated in a discriminatory manner by any person acting by virtue of
any written law or in the performance of the functions of any public office or any public
authority.
2. In this article the expression "discriminatory" means affording different treatment to
different persons attributable wholly or mainly to their or their parents' or guardians'
respective descriptions by race, place of ori6gin, political opinions, colour, creed, age,
disability, marital status, sex, gender, language, birth, social class, pregnancy, religion,
conscience, belief or culture whereby persons of one such description are subjected to
disabilities or restrictions to which persons of another such description are not made
subject or are accorded privileges or advantages which are not afforded to persons of
another such description.
Const. of Co-operative Republic of Guyana, 1980 rev. 2016, Pt. 2, Tit. 1, Art. 149, §§ 1 &
2.

1. Every woman is entitled to equal rights and status with men in all spheres of political, economic and social life. All forms of discrimination against women on the basis of gender or sex are illegal.

2. Every woman is entitled to equal access with men to academic, vocational and professional training, equal opportunities in employment, remuneration and promotion and in social, political and cultural activity.

Const. of Co-operative Republic of Guyana, 1980 rev. 2016, Pt. 2, Tit. 1, Art. 149F, §§ 1 & 2.

**Haiti**

To establish a governmental regime based on the fundamental liberties and the respect for human rights, the social peace, economic equity, the equity of gender, the concerted action and the participation of all the population in the grand decisions engaging the national life, by an effective decentralization.

To assure to women a representation in the instances of power and of decision which must conform to the equality of the sexes and to equity of gender.

Konstitisyon Ayiti [Const.] 1987 rev. 2012, Pmbl. (Haiti).

The State guarantees workers equal working conditions and wages regardless of their sex, beliefs, opinions and marital status.

Konstitisyon Ayiti [Const.] 1987 rev. 2012, Tit. III, Ch. II, § G, Art. 35-2 (Haiti).

**Honduras**

All forms of discrimination on account of sex, race, class, or any other reason prejudicial to human dignity shall be punishable.

Constitución Política de la República de Honduras [Const.] 1982 rev. 2013, Tit. III, Ch. I, Art. 60 (Honduras).

**Hungary**

2. Hungary shall guarantee the fundamental rights to everyone without discrimination and in particular without discrimination on grounds of race, colour, sex, disability, language, religion, political or other opinion, national or social origin, property, birth or any other status.

3. Women and men shall have equal rights.

Magyarország Alaptörvénye [Const.] 2011 rev. 2016, Art. XV ¶¶ 2 & 3 (Hungary).

**Iceland**

Everyone shall be equal before the law and enjoy human rights irrespective of sex, religion, opinion, national origin, race, colour, property, birth or other status. Men and women shall enjoy equal rights in all respects.

Stjórnarskrá lýðveldisins Íslands [Const.] 1944 rev. 2013, VII, Art. 65 (Iceland).

**India**

1. The State shall not discriminate against any citizen on grounds only of religion, race, caste, sex, place of birth or any of them.

2. No citizen shall, on grounds only of religion, race, caste, sex, place of birth or any of them, be subject to any disability, liability, restriction or condition with regard to-
a. access to shops, public restaurants, hotels and places of public entertainment; or
b. the use of wells, tanks, bathing ghats, roads and places of public resort maintained wholly or partly out of State funds or dedicated to the use of general public.
Bhāratīya Saṃvidhāna [Const.] 1949 rev. 2016, Pt. III, Art. 15, Cls. 1 & 2 (India).
No citizen shall, on grounds only of religion, race, caste, sex, descent, place of birth, residence or any of them, be ineligible for, or discriminated against in respect of, any employment or office under the State.
Bhāratīya Saṃvidhāna [Const.] 1949 rev. 2016, Pt. III, Art. 16, Cl. 2 (India).
39. The State shall, in particular, direct its policy towards securing-
a. that the citizen, men and women equally, have the right to an adequate means of livelihood;
Bhāratīya Saṃvidhāna [Const.] 1949 rev. 2016, Pt. IV, Art. 39 ¶ a (India).

## Iran

All people of Iran, whatever the ethnic group or tribe to which they belong, enjoy equal rights; and colour, race, language, and the like, do not bestow any privilege.
قانون اساسی جمهوری اسلامی ایران [Const.] 1979 rev. 1989, Ch. III, Art. 19 (Iran).
All citizens of the country, both men and women, equally enjoy the protection of the law and enjoy all human, political, economic, social, and cultural rights, in conformity with Islamic criteria.
قانون اساسی جمهوری اسلامی ایران [Const.] 1979 rev. 1989, Ch. III, Art. 20 (Iran).

## Iraq

Iraqis are equal before the law without discrimination based on gender, race, ethnicity, nationality, origin, color, religion, sect, belief or opinion, or economic or social status.
Const. of Republic of Iraq, 2005, § 2, Ch. 1, 1, Art. 14.

## Italy

All citizens have equal social dignity and are equal before the law, without distinction of sex, race, language, religion, political opinion, personal and social conditions.
It is the duty of the Republic to remove those obstacles of an economic or social nature which constrain the freedom and equality of citizens, thereby impeding the full development of the human person and the effective participation of all workers in the political, economic and social organisation of the country.
Costituzione della Repubblica Italiana [Const.] 1947 rev. 2012, Art. 3 (Italy).

## Jamaica

The rights and freedoms referred to in subsection (2) are as follows- […]
i. the right to freedom from discrimination on the ground of being male or female;
Const. of Jamaica 1962 rev. 2015, Ch. !!!, § 13, Subsec. 3 ¶ I, Subpara. I.

## Japan

All of the people are equal under the law and there shall be no discrimination in political, economic or social relations because of race, creed, sex, social status or family origin.

日本国憲法 [Const.] 1946, Ch. III, Art. 14 (Japan).

**Kazakhstan**
No one shall be subject to any discrimination for reasons of origin, social, property status, occupation, sex, race, nationality, language, attitude towards religion, convictions, place of residence or any other circumstances.
Қазақстан Республикасының Конституциясы [Const.] 1995 rev. 2017, § II, Art. 14 ¶ 2 (Kazakhstan).

**Kenya**
3. Women and men have the right to equal treatment, including the right to equal opportunities in political, economic, cultural and social spheres.
4. The State shall not discriminate directly or indirectly against any person on any ground, including race, sex, pregnancy, marital status, health status, ethnic or social origin, colour, age, disability, religion, conscience, belief, culture, dress, language or birth.
Const. of Kenya, 2010, Ch. 4, Pt. 2, § 27, Cls. 3 & 4.

**Kiribati**
Whereas every person in Kiribati is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely—
a. life, liberty, security of the person and the protection of the law;
b. freedom of conscience, of expression and of assembly and association; and
c. protection for the privacy of his home and other property and from deprivation of property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations on that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.
Const. of Kiribati, 1979 rev. 2013, Ch. II, § 3.

**Democratic People's Republic of Korea**
Women are accorded equal social status and rights with men. The State shall afford special protection to mothers and children by providing maternity leave, reduced working hours for mothers with several children, a wide network of maternity hospitals, creches and kindergartens, and other measures. The State shall provide all conditions for women to play their full roles in society.
조선민주주의인민공화국 사회주의헌법 [Const.] 1972 rev. 2016, Ch. V, Art. 77 (North Korea).

**Republic of Korea**
All citizens shall be equal before the law, and there shall be no discrimination in political, economic, societal or cultural life on account of sex, religion or social status.
대한민국 헌법 [Const.] 1948 rev. 1987, Ch. II, Art. 11 ¶ 1 (South Korea).

**Kosovo**

The Republic of Kosovo ensures gender equality as a fundamental value for the democratic development of the society, providing equal opportunities for both female and male participation in the political, economic, social, cultural and other areas of societal life.
Kushtetuta e Kosovës [Const.] 2008 rev. 2016, Ch. I, Art. 7 ¶ 2 (Kosovo).
No one shall be discriminated against on grounds of race, color, gender, language, religion, political or other opinion, national or social origin, relation to any community, property, economic and social condition, sexual orientation, birth, disability or other personal status.
Kushtetuta e Kosovës [Const.] 2008 rev. 2016, Ch. II, Art. 24 ¶ 2 (Kosovo).

**Kuwait**
The people are peers in human dignity and have, in the eyes of the Law, equal public rights and obligations. There shall be made no differentiation among them because of gender, origin, language or religion.
الدستور الكويتي [Const.] 1962 reinst. 1992, Pt. III, Art. 29 (Kuwait).

**Kyrgyzstan**
2. The Kyrgyz Republic shall respect and ensure human rights and freedoms to all persons on its territory and under its jurisdiction.
No one may be subject to discrimination on the basis of sex, race, language, disability, ethnicity, belief, age, political and other convictions, education, background, proprietary and other status as well as other circumstances.
Special measures defined by law and aimed at ensuring equal opportunities for various social groups in accordance with international commitments shall not be considered as discrimination. […]
4. In the Kyrgyz Republic men and women shall have equal rights and freedoms and equal opportunities for their realization.
Const. of the Kyrgyz Republic, 2010 rev. 2016, § II, Ch. I, Art. 16 ¶¶ 2 & 4 (Kyrgyzstan).

**Lao People's Democratic Republic**
Lao citizens are all equal before the law irrespective of their gender, social status, education, beliefs and ethnic group.
Const. of Lao People's Democratic Republic, 1991 rev. 2015, Ch. IV, Art. 35.
Citizens of both genders enjoy equal rights in the political, economic, cultural and social fields and in family affairs.
Const. of Lao People's Democratic Republic, 1991 rev. 2015, Ch. IV, Art. 37.

**Lesotho**
Whereas every person in Lesotho is entitled, whatever his race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status to fundamental human rights and freedoms, that is to say, to each and all of the following—
a. the right to life;
b. the right to personal liberty;
c. freedom of movement and residence;

d. freedom from inhuman treatment;
e. freedom from slavery and forced labour;
f. freedom from arbitrary search or entry;
g. the right to respect for private and family life;
h. the right to a fair trial of criminal charges against him and to a fair determination of his civil rights and obligations;
i. freedom of conscience;
j. freedom of expression;
k. freedom of peaceful assembly;
l. freedom of association;
m. freedom from arbitrary seizure of property;
n. freedom from discrimination;
o. the right to equality before the law and the equal protection of the law; and
p. the right to participate in government, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms, subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any person does not prejudice the rights and freedoms of others or the public interest.
Const. of Kingdom of Lesotho, 1993 rev. 2018, Ch. II, § 4, Subsec. 1.
1. Subject to the provisions of subsections (4) and (5) no law shall make any provision that is discriminatory either of itself or in its effect.
2. Subject to the provisions of subsection (6), no person shall be treated in a discriminatory manner by any person acting by virtue of any written law or in the performance of the functions of any public office or any public authority.
3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Kingdom of Lesotho, 1993 rev. 2018, Ch. II, § 18, Subsecs. 1,  2 & 3.

## Liberia

All persons, irrespective of ethnic background, race, sex, creed, place of origin or political opinion, are entitled to the fundamental rights and freedoms of the individual, subject to such qualifications as provided for in this Constitution.
Const. of Liberia, 1986, Ch. III, Art. 11, b.

## Libya

Libyans shall be equal before the law, enjoy equal civil and political rights with, have the same opportunities in all areas and be subject to the same public duties and obligations, without distinction on the grounds of religion, belief, language, wealth, gender, kinship, political opinions, social status, or tribal, regional or familial adherence.
Const. of Libya, 2011 rev. 2012, Ch. 1, Art. 6.

**Liechtenstein**
There shall be equality of rights between the sexes.
Const. of Principality of Liechtenstein, 1921 rev. 2011, Ch. IV, Art. 31 ¶ 2.

**Lithuania**
The rights of the human being may not be restricted, nor may he be granted any privileges on the ground of gender, race, nationality, language, origin, social status, belief, convictions, or views.
Lietuvos Respublikos Konstitucija [Const.] 1992 rev. 2019, Ch. II, Art. 29.

**Luxembourg**
Women and men are equal in rights and duties. The State sees to active promotion of elimination of impediments which may exist in matters of equality between women and men.
Const. of Grand Duchy of Luxembourg, 1868 rev. 2009, Ch. II, Art. 11 ¶ 2.

**Republic of North Macedonia**
Citizens of the Republic of Macedonia are equal in their freedoms and rights, regardless of sex, race, colour of skin, national and social origin, political and religious beliefs, property and social status.
All citizens are equal before the Constitution and law.
Const. of Republic of North Macedonia,1991 rev. 2011, II, 1, Art. 9.

**Madagascar**
All individuals are equal before the law and enjoy the same fundamental freedoms protected by the law without discrimination founded on gender, the level of instruction, wealth, origin, religious belief or opinion.
Const. of Republic of Madagascar, 2010, Tit. I, Art. 6.
No one may be prejudiced in their work or in their employment for reason of gender, of age, of religion, of opinions, of origins, of belonging to a trade-union or of political convictions.
Const. of Republic of Madagascar, 2010, Tit. II, Sub-tit. II, Art. 28.

**Malawi**
The State shall actively promote the welfare and development of the people of Malawi by progressively adopting and implementing policies and legislation aimed at achieving the following goals—
a.  To obtain gender equality through—
i. full participation of women in all spheres of Malawian society on the basis of equal opportunities with men;
ii. the implementation of the principles of nondiscrimination and such other measures as may be required; and
iii. the implementation of policies to address social issues such as domestic violence, security of the person, lack of maternity benefits, economic exploitation and rights to property.
Const. of Republic of Malawi, 1994 rev. 2017, Ch. III, § 13.

Discrimination of persons in any form is prohibited and all persons are, under any law, guaranteed equal and effective protection against discrimination on grounds of race, colour, sex, language, religion, political or other opinion, national, ethnic or social origin, disability, property, birth or other status or condition.

Const. of Republic of Malawi, 1994 rev. 2017, Ch. IV, § 20, Subsec. 1.

1. Women have the right to full and equal protection by the law, and have the right not to be discriminated against on the basis of their gender or marital status which includes the right—

a. to be accorded the same rights as men in civil law, including equal capacity—

i. to enter into contracts;

ii. to acquire and maintain rights in property, independently or in association with others, regardless of their marital status;

iii. to acquire and retain custody, guardianship and care of children and to have an equal right in the making of decisions that affect their upbringing; and

iv. to acquire and retain citizenship and nationality.

b. on the dissolution of marriage, howsoever entered into—

i. to a fair disposition of property that is held jointly with a husband; and

ii. to fair maintenance, taking into consideration all the circumstances and, in particular, the means of the former husband and the needs of any children.

2. Any law that discriminates against women on the basis of gender or marital status shall be invalid and legislation shall be passed to eliminate customs and practices that discriminate against women, particularly practices such as—

a. sexual abuse, harassment and violence;

b. discrimination in work, business and public affairs; and

c. deprivation of property, including property obtained by inheritance.

Const. of Republic of Malawi, 1994 rev. 2017, Ch. IV, § 24, Subsecs. 1 & 2.

**Malaysia**

Except as expressly authorised by this Constitution, there shall be no discrimination against citizens on the ground only of religion, race, descent, place of birth or gender in any law or in the appointment to any office or employment under a public authority or in the administration of any law relating to the acquisition, holding or disposition of property or the establishing or carrying on of any trade, business, profession, vocation or employment.

Fed. Const. of Malaysia, 1957 rev. 2007, Pt. II, Art. 8, Cl. 2.

**Maldives**

Everyone is entitled to the rights and freedoms included in this Chapter without discrimination of any kind, including race, national origin, colour, sex, age, mental or physical disability, political or other opinion, property, birth or other status, or native island.

Const. of Republic of Maldives, 2008, Ch. II, 17, Art. a.

The enumeration of rights and freedoms in this Chapter are guaranteed equally to female and male persons.

Const. of Republic of Maldives, 2008, Ch. II, 62, Art. a.

**Mali**

48

Every Malian shall be born and remain free and equal in rights and obligations. All discrimination founded on social origin, color, language, race, sex, religion and political opinion shall be prohibited.
Const. of Republic of Mali, 1992, Tit. I, Art. 2.

## Malta

The State shall promote the equal right of men and women to enjoy all economic, social, cultural, civil and political rights and for this purpose shall take appropriate measures to eliminate all forms of discrimination between the sexes by any person, organisation or enterprise; the State shall in particular aim at ensuring that women workers enjoy equal rights and the same wages for the same work as men.
Const. of Malta, 1964 rev. 2016, Ch. II, Art. 14.
Whereas every person in Malta is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed, sex, sexual orientation or gender identity but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely –
a. life, liberty, security of the person, the enjoyment of property and the protection of the law;
b. freedom of conscience, of expression and of peaceful assembly and association; and
c. respect for his private and family life, the subsequent provisions of this Chapter shall have effect for the purpose of affording protection to the aforesaid rights and freedoms, subject to such limitations of that protection as are contained in those provisions being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.
Const. of Malta, 1964 rev. 2016, Ch. IV, Art. 32.
1. Subject to the provisions of sub-articles (4), (5) and (7) of this article, no law shall make any provision that is discriminatory either of itself or in its effect.
2. Subject to the provisions of sub-articles (6), (7) and (8) of this article, no person shall be treated in a discriminatory manner by any person acting by virtue of any written law or in the performance of the functions of any public office or any public authority.
3. In this article, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, place of origin, political opinions, colour, creed, sex, sexual orientation or gender identity whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Malta, 1964 rev. 2016, Ch. IV, Art. 45, Subarts. 1, 2 & 3.

## Marshall Islands

No law and no executive or judicial action shall, either expressly, or in its practical application, discriminate against any persons on the basis of gender, race, color, language, religion, political or other opinion, national or social origin, place of birth, family status or descent.
Const. of Republic of the Marshall Islands, 1979 rev. 1995, Art. II, § 12 ¶ 2.

**Mauritania**

The Republic assures to all citizens without distinction of origin, of race, of sex, or of social condition, equality before the law.

Const. of Islamic Republic of Mauritania, 1991 rev. 2012, Tit. I, Art. 1.

**Mauritius**

It is hereby recognised and declared that in Mauritius there have existed and shall continue to exist without discrimination by reason of race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, each and all of the following human rights and fundamental freedoms

a. the right of the individual to life, liberty, security of the person and the protection of the law;

b. freedom of conscience, of expression, of assembly and association and freedom to establish schools, and

c. the right of the individual to protection for the privacy of his home and other property and from deprivation of property without compensation, and the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of those rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.

La Const. de Maurice, 1968 rev. 2016, Ch. II, § 3 (Mauritius).

1. Subject to subsections (4), (5) and (7), no law shall make any provision that is discriminatory either of itself or in its effect.

2. Subject to subsections (6), (7) and (8), no person shall be treated in a discriminatory manner by any person acting in the performance of any public function conferred by any law or otherwise in the performance of the functions of any public office or any public authority.

3. In this section, 'discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, caste, place of origin, political opinions, colour, creed or sex whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages that are not accorded to persons of another such description.

La Const. de Maurice [Constitution] 1968 rev. 2016, Ch. II, § 16, Subsecs. 1, 2 & 3 (Mauritius).

**Mexico**

Any form of discrimination, based on ethnic or national origin, gender, age, disabilities, social status, medical conditions, religion, opinions, sexual orientation, marital status, or any other form, which violates the human dignity or seeks to annul or diminish the rights and freedoms of the people, is prohibited.

Const. Política de los Estados Unidos Mexicanos, 1917 rev. 2015, Tit. 1, Ch. I, Art. 1 (Mexico).

Man and woman are equal under the law. The law shall protect the organization and development of the family.

Const. Política de los Estados Unidos Mexicanos, 1917 rev. 2015, Tit. 1, Ch. I, Art. 4 (Mexico).

**Federated States of Micronesia**
Equal protection of the laws may not be denied or impaired on account of sex, race, ancestry, national origin, language, or social status.
Const. of Federated States of Micronesia, 1978 rev. 1990, Art. IV, § 4.

**Republic of Moldova**
All citizens of the Republic of Moldova shall be equal before the law and public authorities, regardless of the race, nationality, ethnic origin, language, religion, sex, opinion, political affiliation, property or social origin.
Const. of Republic of Moldova, 1994 rev. 2016, Tit. II, Ch. I, Art. 16 ¶ 2.

**Mongolia**
No person shall be discriminated against on the basis of ethnic origin, language, race, age, sex [gender], social origin and status, property and assets, employment occupation and official position, religion and conscience, conviction and opinion, and education. Every human being shall be a legal person.
Монгол Улсын Үндсэн Хууль [Const.] 1992 rev. 2001, Ch. 2, Art. 14, § 2 (Mongolia).

**Montenegro**
The state shall guarantee the equality of women and men and shall develop the policy of equal opportunities.
Const. of Republic of Montenegro, 2007 rev. 2013, Pt. 2, 1, Art. 18.

**Morocco**
Founded on these values and these immutable principles, and strong in its firm will to reaffirm the bonds of fraternity, or cooperation, or solidarity and of constructive partnership with all other States, and to work for common progress, the Kingdom of Morocco, [a] united State, totally sovereign, belonging the Grand Maghreb, reaffirms that which follows and commits itself: […]
•To ban and combat all discrimination whenever it encounters it, for reason of sex, or color, of beliefs, of culture, of social or regional origin, of language, of handicap or whatever personal circumstance that may be;
Const. of Kingdom of Morocco, 2011, Pmbl.
The public powers work for the creation of the conditions permitting the effectiveness of liberty and of the equality of citizens [feminine] and citizens [masculine] to be made general [generaliser], as well as their participation in political, economic, cultural and social life.
Const. of Kingdom of Morocco, 2011, Tit. I, Art. 6.
The man and the woman enjoy, in equality, the rights and freedoms of civil, political, economic, social, cultural and environmental character, enounced in this Title and in the other provisions of the Constitution, as well as in the international conventions and pacts duly ratified by Morocco and this, with respect for the provisions of the Constitution, of the constants [constantes] of the Kingdom and of its laws.

Const. of Kingdom of Morocco, 2011, Tit. II, Art. 19.

## Mozambique

All citizens are equal before the law, and they shall enjoy the same rights and be subject to the same duties, regardless of colour, race, sex, ethnic origin, place of birth, religion, level of education, social position, the marital status of their parents, their profession or their political preference.
Const. of Republic of Mozambique, 2004 rev. 2007, Tit. III, Ch. I, Art. 35.
Men and women shall be equal before the law in all spheres of political, economic, social and cultural life.
Const. of Republic of Mozambique, 2004 rev. 2007, Tit. III, Ch. I, Art. 36.

## Myanmar

The Union shall not discriminate any citizen of the Republic of the Union of Myanmar, based on race, birth, religion, official position, status, culture, sex and wealth.
ပြည်ထောင်စုသမ္မတမြန်မာနိုင်ငံတော် ဖွဲ့စည်းပုံအခြေခံဥပဒေ [Const.] 2008 rev. 2015, Ch. VIII, § 348 (Myanmar).

## Namibia

Whereas the said rights include the right of the individual to life, liberty and the pursuit of happiness, regardless of race, colour, ethnic origin, sex, religion, creed or social or economic status;
Const. of Republic of Namibia, 1990 rev. 2014, Pmbl.
No persons may be discriminated against on the grounds of sex, race, colour, ethnic origin, religion, creed or social or economic status.
Const. of Republic of Namibia, 1990 rev. 2014, Ch. 3, Art. 10 ¶ 2.

## Nauru

Whereas every person in Nauru is entitled to the fundamental rights and freedoms of the individual, that is to say, has the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following freedoms, namely:-
a. life, liberty, security of the person, the enjoyment of property and the protection of the law;
b. freedom of conscience, of expression and of peaceful assembly and association; and
c. respect for his private and family life, the subsequent provisions of this Part have effect for the purpose of affording protection to those rights and freedoms, subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of those rights and freedoms by a person does not prejudice the rights and freedoms of other persons or the public interest.
Const. of Republic of Nauru, 1968 rev. 2015, Pt. II, Art. 3.

## Nepal

2. There shall be no discrimination in the application of general laws on the grounds of origin, religion, race, caste, tribe, sex, physical conditions, disability, health condition,

matrimonial status, pregnancy, economic condition, language or geographical region, or ideology or any other such grounds.

3. The state shall not discriminate among citizens on grounds of origin, religion, race, caste, tribe, sex, economic condition, language or geographical region, ideology and such other matters.

Provided that nothing shall be deemed to bar the making of special provisions by law for the protection, empowerment or advancement of the women lagging behind socially and culturally, Dalits, Adibasi, Madhesi, Tharus, Muslims, oppressed class, backward communities, minorities, marginalized groups, peasants, laborers, youths, children, senior citizens, sexual minorities, persons with disability, pregnant, incapacitated and the helpless persons, and of the citizens who belong to backward regions and financially deprived citizens including the Khas Arya.

नेपालको संविधान २०७२ [Const.] 2015 rev. 2016, Pt. 3, Art. 18, Cls. 2 & 3.

## Netherlands

All persons in the Netherlands shall be treated equally in equal circumstances. Discrimination on the grounds of religion, belief, political opinion, race or sex or on any other grounds whatsoever shall not be permitted.

Grondwet voor het Koninkrijk der Nederlanden [Const.] 1814 rev. 2008, Ch. 1, Art. 1 (Netherlands).

## New Zealand

For the purposes of this Act, the prohibited grounds of discrimination are—

a. sex, which includes pregnancy and childbirth.

Const. of New Zealand, 1852 rev. 2014, Human Rights Act of 1993, Pt. 2, Subpt. 3, § 21, Subsec. 1 ¶ a.

## Nicaragua

All individuals are equal before the law and have the right to equal protection. There shall be no discrimination based on birth, nationality, political belief, race, gender, language, religion, opinion, origin, economic position or social condition.

Const. of Nicaragua, 1987 rev. 2014, Tit. IV, Ch. I, Art. 27.

Unconditional equality of all Nicaraguans in the enjoyment of their political rights, in the exercise of these rights, and in the fulfillment of their duties and responsibilities, is established; there exists absolute equality between men and women.

Const. of Nicaragua, 1987 rev. 2014, Tit. IV, Ch. II, Art. 48.

## Niger

In the exercise of the power of the State, personal power, regionalism, ethnocentrism, discrimination, nepotism, sexism, the clan spirit, the feudal spirit, slavery in all its forms, illicit enrichment, favoritism, corruption, racketeering and the influence-trafficking are punished by the law.

Const. of Republic of Niger, 2010 rev. 2017, First Tit., Art. 4.

The Republic of Niger is a State of Law [Etat de droit].

It assures to all equality before the law without distinction of sex, [or] of social, racial, ethnic or religious origin.

It respects and protects all beliefs. No religion, no belief can arrogate the political power or interfere in the affairs of State.

All particularist propaganda of a regionalist, racial or ethnic character, all manifestation of racial, social, sexist, ethnic, political or religious discrimination, are punished by the law.
Const. of Republic of Niger, 2010 rev. 2017, First Tit., Art. 8.

The State sees to the elimination of all forms of discrimination concerning [à l'égard de] women, young girls and handicapped persons. The public policies in all the domains assure their full development and their participation in the national development.
Const. of Republic of Niger, 2010 rev. 2017, Tit. II, Art. 22.

## Nigeria

Accordingly, national integration shall be actively encouraged, whilst discrimination on the grounds of place of origin, sex, religion, status, ethnic or linguistic association or ties shall be prohibited.
Const. of Federal Republic of Nigeria, 1999 rev. 2011, Ch. II, § 15, Subsec. 2.

A citizen of Nigeria of a particular community, ethnic group, place of origin, sex, religion or political opinion shall not, by reason only that he is such a person:-

a.be subjected either expressly by, or in the practical application of, any law in force in Nigeria or any executive or administrative action of the government, to disabilities or restrictions to which citizens of Nigeria of other communities, ethnic groups, places of origin, sex, religions or political opinions are not made subject; or
Const. of Federal Republic of Nigeria, 1999 rev. 2011, Ch. IV, § 42, Subsec. 1 ¶ a.

## Oman

All Citizens are equal before the Law and share the same public rights and duties. There shall be no discrimination amongst them on the ground of gender, origin, colour, language, religion, sect, domicile, or social status.
Const. of Oman, 1996 rev. 2011, Ch. 3, Art. 17.

## Pakistan

There shall be no discrimination on the basis of sex.
آئین پاکستان [Const.] 1973 reinst. 2002, rev.2018, Pt. II, Ch. 1, Art. 25, Cl. 2 (Pakistan).

In respect of access to places of public entertainment or resort, not intended for religious purposes only, there shall be no discrimination against any citizen on the ground only of race, religion, caste, sex, residence or place of birth.
آئین پاکستان [Const.] 1973 reinst. 2002, rev.2018, Pt. II, Ch. 1, Art. 26, Cl. 1 (Pakistan).

No citizen otherwise qualified for appointment in the service of Pakistan shall be discriminated against in respect of any such appointment on the ground only of race, religion, caste, sex, residence or place of birth:

•Provided that, for a period not exceeding forty years from the commencing day, posts may be reserved for persons belonging to any class or area to secure their adequate representation in the service of Pakistan:

 •Provided further that, in the interest of the said service, specified posts or services may be reserved for members of either sex if such posts or services entail the performance of

duties and functions which cannot be adequately performed by members of the other sex:
•Provided also that under-representation of any class or area in the service of Pakistan may be redressed in such manner as may be determined by an Act of Majlis-e-Shoora (Parliament).

آئین پاکستان [Const.] 1973 reinst. 2002, rev.2018, Pt. II, Ch. 1, Art. 27, Cl. 1 (Pakistan).

## Palau

Every person shall be equal under the law and shall be entitled to equal protection. The government shall take no action to discriminate against any person on the basis of sex, race, place of origin, language, religion or belief, social status or clan affiliation except for the preferential treatment of citizens, for the protection of minors, elderly, indigent, physically or mentally handicapped, and other similar groups, and in matters concerning intestate succession and domestic relations. No person shall be treated unfairly in legislative or executive investigation.
Uchetemel a llach er a beluu er a Belau [Const.] 1981 rev. 1992, Art. IV, § 5 (Palau).

## Palestine

Palestinians shall be equal before the law and the judiciary, without distinction based upon race, sex, color, religion, political views or disability.
Const. of State of Palestine, 2003 rev. 2005, Tit. 2, Art. 9.

## Panama

There shall be no public or private privileges, or discrimination, by reason of race, birth, social class, handicap, sex, religion or political ideology.
Political Const. of Republic of Panama, 1972 rev. 2004, Tit. III, Ch. 1, Art. 19.

## Papua New Guinea

WE HEREBY ACKNOWLEDGE that, subject to any restrictions imposed by law on noncitizens, all persons in our country are entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever their race, tribe, places of origin, political opinion, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the legitimate public interest, to each of the following:
a. life, liberty, security of the person and the protection of the law; and
b. the right to take part in political activities; and
c. freedom from inhuman treatment and forced labour; and
d. freedom of conscience, of expression, of information and of assembly and association; and
e. freedom of employment and freedom of movement; and
f. protection for the privacy of their homes and other property and from unjust deprivation of property, and have accordingly included in this Constitution provisions designed to afford protection to those rights and freedoms, subject to such limitations on that protection as are contained in those provisions, being limitations primarily designed to ensure that the enjoyment of the acknowledged rights and freedoms by an individual does not prejudice the rights and freedoms of others or the legitimate public interest.
Const. of Independent State of Papua New Guinea, 1975 rev. 2016, Pmbl., Basic Rights.

Subject to this Constitution, all citizens have the same rights, privileges, obligations and duties irrespective of race, tribe, place of origin, political opinion, colour, creed, religion or sex.
Const. of Independent State of Papua New Guinea, 1975 rev. 2016, Pt. III, Div. 3, Subdiv. C, Special Rights of Citizens, § 55, Subsec. 1.

## Paraguay

Men and women have equal civil, political, social, economic and cultural rights. The State will promote the conditions and will create the adequate mechanisms for, making equality real and effective, by leveling [allanando] the obstacles that prevent or hinder its exercise and facilitating the participation of women in all areas [ámbitos] of the national life.
Const. of Republic of Paraguay, 1992 rev. 2011, Pt. I, Tit. II, Ch. III, Art. 48.
No kind of discrimination will be admitted between the workers for motives of ethnic, gender, age, religion, social status and political or syndical preferences.
The work of persons with limitations or physical or mental incapacities will be especially protected.
Const. of Republic of Paraguay, 1992 rev. 2011, Pt. I, Tit. II, Ch. VIII, § I, Art. 88.


## Peru

Every person has the right: […]
2. To equality before the law. No person shall be discriminated against on the basis of origin, race, sex, language, religion, opinion, economic situation, or any other distinguishing feature.
Political Const. of Peru, 1993 rev. 2009, Tit. I, Ch. I, Art. 2 ¶ 2.

## Philippines

The State recognizes the role of women in nation-building,and shall ensure the fundamental equality before the law of women and men.
Saligang Batas ng Pilipinas [Const.] 1987, Art. II, § 14 (Philippines).

## Poland

1. Men and women shall have equal rights in family, political, social and economic life in the Republic of Poland.
2. Men and women shall have equal rights, in particular, regarding education, employment and promotion, and shall have the right to equal compensation for work of similar value, to social security, to hold offices, and to receive public honours and decorations.
Konstytucja Rzeczypospolitej Polskiej [Const.] 1997 rev. 2009, Ch. II, Art. 33 ¶¶ 1 & 2 (Poland).

## Portugal

No one shall be privileged, favoured, prejudiced, deprived of any right or exempted from any duty on the basis of ancestry, sex, race, language, place of origin, religion, political or ideological beliefs, education, economic situation, social circumstances or sexual orientation.

Constituição Política da República Portuguesa [Const.] 1976 rev. 2005, Pt. I, Tit. I, Art. 13 ¶ 2 (Portugal).

Regardless of age, sex, race, citizenship, place of origin, religion and political and ideological convictions, every worker shall possess the right:

a. To the remuneration of his work in accordance with its volume, nature and quality, with respect for the principle of equal pay for equal work and in such a way as to guarantee a proper living;

 b. That work be organised in keeping with social dignity and in such a way as to provide personal fulfilment and to make it possible to reconcile professional and family life;

c. To work in conditions that are hygienic, safe and healthy;

d. To rest and leisure time, a maximum limit on the working day, a weekly rest period and periodic paid holidays;

e. To material assistance when he involuntarily finds himself unemployed;

f. To assistance and fair reparation when he is the victim of a work-related accident or occupational illness.

Constituição Política da República Portuguesa [Const.] 1976 rev. 2005, Pt. I, Tit. III, Ch. I, Art. 59 ¶ 1 (Portugal).

## Qatar

People are equal before the law. There shall be no discrimination against them because of sex, race, language, or religion.

دستور قطر [Const.] 2003,Ch. III, Art. 35 (Qatar).

## Romania

Romania is the common and indivisible homeland of all its citizens regardless of race, ethnic origin, language, religion, sex, opinion, political allegiance, wealth, or social origin. Const. of Romania, 1991 rev. 2003, Tit. I, Art. 4 ¶ 2.

## Russian Federation

2. The State guarantees the equality of human and civil rights and freedoms regardless of sex, race, nationality, language, origin, material and official status, place of residence, attitude to religion, convictions, membership of public associations, or of other circumstances. All forms of limitations of human rights on social, racial, national, language or religious grounds shall be prohibited.

3. Men and women shall enjoy equal rights and freedoms and equal opportunities to exercise them.

Конституция Российской Федерации [Const.] 1993 rev. 2014, § 1, Ch. 2, Art. 19, Pt.s 2 & 3 (Russian Federation).

## Rwanda

The State of Rwanda commits itself to upholding the following fundamental principles and ensuring their respect: […]

4. building a State governed by the rule of law, a pluralistic democratic Government, equality of all Rwandans and between men and women which is affirmed by women occupying at least thirty percent (30%) of positions in decision-making organs;

Const. of Republic of Rwanda, 2003 rev. 2015, Ch. III, Art. 10 ¶ 4.

Discrimination of any kind or its propaganda based on, inter alia, ethnic origin, family or ancestry, clan, skin colour or race, sex, region, economic categories, religion or faith, opinion, fortune, cultural differences, language, economic status, physical or mental disability or any other form of discrimination are prohibited and punishable by law.
Const. of Republic of Rwanda, 2003 rev. 2015, Ch. IV, § 1, Art. 16.

**Saint Lucia**
Whereas every person in Saint Lucia is entitled to the fundamental rights and freedoms, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely-
a. life, liberty, security of the person, equality before the law and the protection of the law;
b. freedom of conscience, of expression and of assembly and association; and
c. protection for his family life, his personal privacy, the privacy of his home and other property and from deprivation of property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any person does not prejudice the rights and freedoms of others or the public interest.
Const. of Saint Lucia, 1978, Ch. 1, § 1.
1. Subject to the provisions of subsections (4), (5) and (7) of this section, no law shall make any provision that is discriminatory either of itself or in its effect.
2. Subject to the provisions of subsections (6), (7) and (8) of this section, no person shall be treated in a discriminatory manner by any person or authority.
3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by sex, race, place of origin, political opinions, colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Saint Lucia, 1978, Ch. 1, § 13.1, Subsecs. 1, 2 & 3.

**Saint Vincent and the Grenadines**
Whereas every person in Saint Vincent is entitled to the fundamental rights and freedoms, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely—
a. life, liberty, security of the person and the protection of the law;
b. freedom of conscience, of expression and of assembly and association; and
c. protection for the privacy of his home and other property and from deprivation of property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any person does not prejudice the rights and freedoms of others or the public interest.

Const. of Saint Vincent & the Grenadines, 1979, Ch. I, § 1.

1. Subject to the provisions of subsections (4), (5) and (7) of this section, no law shall make any provision that is discriminatory either of itself or in its effect.

2. Subject to the provisions of subsections (6), (7) and (8) of this section, no persons shall be treated in a discriminatory manner by any persons acting by virtue of any written law or in the performance of the functions of any public office or any public authority.

3. In this section, the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by sex, race, place of origin, political opinions, colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.

Const. of Saint Vincent & the Grenadines, 1979, Ch. I, § 13, Subsecs. 1, 2 & 3.

## Samoa

Except as expressly authorised under the provisions of this Constitution, no law and no executive or administrative action of the State shall, either expressly or in its practical application, subject any person or persons to any disability or restriction or confer on any person or persons any privilege or advantage on grounds only of descent, sex, language, religion, political or other opinion, social origin, place of birth, family status, or any of them.

Const. of Independent State of Samoa, 1962 rev. 2017, Pt. II, § 15, Cl. 2.

## Sao Tome and Principe

1. All citizens are equal before the law, enjoy the same rights and are subject to the same obligations without distinction as to social or racial origin, sex, political tendency, religious belief or philosophical conviction.

2. Woman is equal to man in rights and obligations, being guaranteed to her full participation in political, economic, social and cultural life.

Constituição da República Democrática de São Tomé e Príncipe [Const.] 1975 rev. 2003, Pt. II, Tit. I, Art. 15 ¶¶ 1 & 2 (Sao Tome & Principe).

## Senegal

The Republic of Senegal is secular, democratic, and social. It assures the equality before the law of all the citizens, without distinction of origin, of race, of sex [and] of religion. It respects all beliefs [croyances].

Const. de la République du Sénégal, 2001 rev. 2016, Tit. I, Art. 1 (Senegal).

All human beings are equal before the law. Men and Women are equal in right [droit].

Const. de la République du Sénégal, 2001 rev. 2016, Tit. II, Art. 7 (Senegal).

## Serbia

The State shall guarantee the equality of women and men and develop equal opportunities policy.

Устав Републике Србије [Const.] 2006, Pt. 1, Art. 15 (Serbia).

All direct or indirect discrimination based on any grounds, particularly on race, sex, national origin, social origin, birth, religion, political or other opinion, property status, culture, language, age, mental or physical disability shall be prohibited.

Устав Републике Србије [Const.] 2006, Pt. 2, Art. 21 (Serbia).

**Sierra Leone**

Whereas every person in Sierra Leone is entitled to the fundamental human rights and freedoms of the individual, that is to say, has the right, whatever his race, tribe, place of origin, political opinion, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following—

a. life, liberty, security of person, the enjoyment of property, and the protection of law;

b. freedom of conscience, of expression and of assembly and association;

c. respect for private and family life; and

d. protection from deprivation of property without compensation; the subsequent provisions of this Chapter shall have effect for the purpose of affording protection to the aforesaid rights and freedoms, subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others, or the public interest.

Const. of Republic of Sierra Leone, 1991 reinst. 1996 rev. 2013, Ch. III, § 15.

1. Subject to the provisions of subsection (4), (5) and (7), no law shall make any provision which is discriminatory either of itself or in its effect.

2. Subject to the provisions of subsections (6), (7) and (8), no person shall be treated in a discriminatory manner by any person acting by virtue of any law or in the performance of the functions of any public office or any public authority.

3. In this section the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, tribe, sex, place of origin, political opinions, colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject, or are accorded privileges or advantages which are not accorded to persons of another such description.

Const. of Republic of Sierra Leone, 1991 reinst. 1996 rev. 2013, Ch. III, § 27, Subsecs. 1, 2 & 3.

**Slovakia**

Basic rights and freedoms on the territory of the Slovak Republic are guaranteed to everyone regardless of sex, race, color of skin, language, faith and religion, political, or other thoughts, national or social origin, affiliation to a nation, or ethnic group, property, descent, or any other status. No one may be harmed, preferred, or discriminated against on these grounds.

Ústava Slovenskej republiky [Const.] 2017, Ch. 2, Pt. 1, Art. 12 ¶ 2 (Slovakia).

**Slovenia**

In Slovenia everyone shall be guaranteed equal human rights and fundamental freedoms irrespective of national origin, race, sex, language, religion, political or other conviction, material standing, birth, education, social status, disability or any other personal circumstance.

Ustava Republike Slovenije [Const.] 1991 rev. 2016, II, Art. 14 (Slovenia).

**Solomon Islands**

Whereas every person in Solomon Islands is entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed or sex, but subject to respect for the rights and freedoms of others and for the public interest, to each and all of the following, namely:

a. life, liberty, security of the person and the protection of the law;

b. freedom of conscience of expression and of assembly and association; and

c. protection for the privacy of his home and other property and from deprivation of property without compensation, the provisions of this Chapter shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations of that protection as are contained in those provisions, being limitations designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.

Solomon Islands Independence Order 1978 [Const.] 1978 rev. 2018, Ch. II, § 3.

1. Subject to the provisions of subsections (5), (6) and (9) of this section, no law shall make any provision that is discriminatory either of itself or in its effect.

3. Subject to the provisions of subsection (9) of this section, no person shall be treated in a discriminatory manner in respect of access to shops, hotels, lodging-houses, public restaurants, eating-houses or places of public entertainment or in respect of access to places of public resort maintained wholly or partly out of public funds or dedicated to the use of the general public.

4. In this section the expression "discriminatory" means affording different treatment to different persons attributable wholly or mainly to their respective descriptions by race, place of origin, political opinions, colour, creed or sex whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.

Solomon Islands Independence Order 1978 [Const.] 1978 rev. 2018, Ch. II, § 15, Subsecs. 1, 3 & 4.

**Somalia**

1. All citizens, regardless of sex, religion, social or economic status, political opinion, clan, disability, occupation, birth or dialect shall have equal rights and duties before the law. […]

3. Government must not discriminate against any person on the basis of age, race, colour, tribe, ethnicity, culture, dialect, gender, birth, disability, religion, political opinion, occupation, or wealth.

Dastuurka Jamhuuriyadda Federaalka Soomaaliya [Const.] 2012, Ch. 2, Tit. 1, Art. 11, Cls. 1 & 3 (Somalia).

**South Africa**

1. The Republic of South Africa is one, sovereign, democratic state founded on the following values: […]

b. Non-racialism and non-sexism.

Const. of Republic of South Africa, 1996 rev. 2012, Ch. 1, § 1 ¶ b.

61

The state may not unfairly discriminate directly or indirectly against anyone on one or more grounds, including race, gender, sex, pregnancy, marital status, ethnic or social origin, colour, sexual orientation, age, disability, religion, conscience, belief, culture, language and birth.

Const. of Republic of South Africa, 1996 rev. 2012, Ch. 2, § 9, Subsec. 3.

The Commission for Gender Equality must promote respect for gender equality and the protection, development and attainment of gender equality.

Const. of Republic of South Africa, 1996 rev. 2012, Ch. 9, Pt. D, § 187, Subsec. 1.


**South Sudan**

All persons are equal before the law and are entitled to the equal protection of the law without discrimination as to race, ethnic origin, colour, sex, language, religious creed, political opinion, birth, locality or social status.

Transitional Const. of Republic of South Sudan, 2011 rev. 2013, Pt. 2, Art. 14.

1. Women shall be accorded full and equal dignity of the person with men.

2. Women shall have the right to equal pay for equal work and other related benefits with men.

3. Women shall have the right to participate equally with men in public life.

4. All levels of government shall:

a. promote women participation in public life and their representation in the legislative and executive organs by at least twenty-five per cent as an affirmative action to redress imbalances created by history, customs, and traditions;

b. enact laws to combat harmful customs and traditions which undermine the dignity and status of women; and

c. provide maternity and child care and medical care for pregnant and lactating women.

5. Women shall have the right to own property and share in the estates of their deceased husbands together with any surviving legal heir of the deceased.

Transitional Const. of Republic of South Sudan, 2011 rev. 2013, Pt. 2, Art. 16.

The Civil Service shall be governed by, inter alia, the following values and principles: […] d.services shall be provided to all persons impartially, fairly, equitably and without bias or discrimination on the basis of religion, ethnicity, region, gender, health status or physical disability;

Transitional Const. of Republic of South Sudan  2011 rev. 2013, Pt. 9, Ch. I, Art. 139, Subart. 1 ¶ d.

National wealth and other resources shall be allocated in a manner that will enable each level of government to discharge its legal and constitutional responsibilities and duties and ensure that the quality of life and dignity of all the people are promoted without discrimination on grounds of gender, religion, political affiliation, ethnicity, language or locality.

Transitional Const. of Republic of South Sudan, 2011 rev. 2013, Pt. 12, Ch. I, Art. 169, Subart. 6.


**Spain**

Spaniards are equal before the law and may not in any way be discriminated against on account of birth, race, sex, religion, opinion or any other personal or social condition or circumstance.

Const. Española, 1978 rev. 2011, Pt. I, Ch. 2, § 14 (Spain).

**Sri Lanka**

2. No citizen shall be discriminated against on the grounds of race, religion, language, caste, sex, political opinion, place of birth or any one of such grounds:

Provided that it shall be lawful to require a person to acquire within a reasonable time sufficient knowledge of any language as a qualification for any employment or office in the Public, Judicial or Local Government Service or in the service of any Public Corporation, where such knowledge is reasonably necessary for the discharge of the duties of such employment or office:

Provided further that it shall be lawful to require a person to have a sufficient knowledge of any language as a qualification for any such employment or office where no function of that employment or office can be discharged otherwise than with a knowledge of that language.

3. No person shall, on the grounds of race, religion, language, caste, sex or any one of such grounds, be subject to any disability, liability, restriction or condition with regard to access to shops, public restaurants, hotels, places of public entertainment and places of public worship of his own religion.

Const. of Democratic Socialist Republic of Sri Lanka, 1978 rev. 2015, Ch. III, Art. 12 ¶¶ 2 & 3.

**Sudan**

*The Republic of Sudan is an independent, sovereign, democratic, parliamentary, pluralistic, decentralized state, where rights and duties are based on citizenship without discrimination due to race, religion, culture, sex, color, gender, social or economic status, political opinion, disability, regional affiliation or any other cause.

Draft Const. Declaration, 2019, Ch. 1, Art. 4, Subart. 1 (Sudan).

2. Repeal laws and provisions that restrict freedoms or that discriminate between citizens on the basis of gender.

7. Guarantee and promote women's rights in Sudan in all social, political, and economic fields, and combat all forms of discrimination against women, taking into account provisional preferential measures in both war and peace circumstances.

Draft Const. Declaration, 2019, Ch. 2, Art. 8, Subarts. 2 & 7 (Sudan).

The state undertakes to protect and strengthen the rights contained in this Charter and to guarantee them for all without discrimination on the basis of race, color, gender, language, religion, political opinion, social status, or other reason.

Draft Const. Declaration, 2019, Ch. 14, Art. 43 (Sudan).

People are equal before the law, and have the right to the protection of the law without discrimination between them on the basis of ethnicity, color, gender, language, religious faith, political opinion, racial or ethnic origin, or any other reason.

Draft Const. Declaration, 2019, Ch. 14, Art. 48 (Sudan).

1. The state protects women's rights as provided in international and regional agreements ratified by Sudan.

2. The state guarantees to both men and women the equal right to enjoy all civil, political, social, cultural, and economic rights, including the right to equal pay for equal work, and other professional benefits.

3. The state guarantees women's rights in all fields and develops them through positive discrimination.
4. The state works to combat harmful customs and traditions that reduce the dignity and status of women.
5. The state provides free healthcare for motherhood, childhood and pregnant women.
Draft Const. Declaration, 2019, Ch. 14, Art. 49 (Sudan).
Education is a right for every citizen. The state guarantees access thereto without discrimination on the basis of religion, race, ethnicity, gender or disability.
Draft Const. Declaration, 2019, Ch. 14, Art. 62, Subart. 1 (Sudan).

**Swaziland**
2. For the avoidance of any doubt, a person shall not be discriminated against on the grounds of gender, race, colour, ethnic origin, tribe, birth, creed or religion, or social or economic standing, political opinion, age or disability.
3. For the purposes of this section, "discriminate" means to give different treatment to different persons attributable only or mainly to their respective descriptions by gender, race, colour, ethnic origin, birth, tribe, creed or religion, or social or economic standing, political opinion, age or disability.
Const. of Kingdom of Swaziland, 2005, Ch. III, § 20, Subsecs. 2 & 3.

**Sweden**
The public institutions shall promote the opportunity for all to attain participation and equality in society and for the rights of the child to be safeguarded. The public institutions shall combat discrimination of persons on grounds of gender, colour, national or ethnic origin, linguistic or religious affiliation, functional disability, sexual orientation, age or other circumstance affecting the individual.
Sveriges grundlagar [Const.] 1974 rev. 2012, The Instrument of Gov't, Ch. 1. Art. 2 (Sweden).
No act of law or other provision may imply the unfavourable treatment of anyone on grounds of gender, unless the provision forms part of efforts to promote equality between men and women or relates to compulsory military service or other equivalent official duties.
Sveriges grundlagar [Const.] 1974 rev. 2012, The Instrument of Gov't, Ch. 2, Pt. 4, Art. 13 (Sweden).

**Switzerland**
2. No person may be discriminated against, in particular on grounds of origin, race, gender, age, language, social position, way of life, religious, ideological, or political convictions, or because of a physical, mental or psychological disability.
3. Men and women have equal rights. The law shall ensure their equality, both in law and in practice, most particularly in the family, in education, and in the workplace. Men and women have the right to equal pay for work of equal value.
Bundesverfassung der Schweizerischen Eidgenossenschaft [Const.] 1999 rev. 2014, Tit. 2, Ch. 1, Art. 8 ¶¶ 2 & 3 (Switzerland).

**Syrian Arab Republic**

Citizens shall be equal in rights and duties without discrimination among them on grounds of sex, origin, language, religion or creed;
Const. of Syrian Arab Republic, 2012, Tit. II, Ch. I, Art. 33, 3.

**Taiwan**
All citizens of the Republic of China, irrespective of sex, religion, ethnic origin, class, or party affiliation, shall be equal before the law.
Const. of Republic of China, 1947 rev. 2015, Ch. II, Art. 7 (Taiwan).

**Tajikistan**
All are equal before the law and court. The State guarantees the rights and freedoms of everyone regardless of his nationality, race, gender, language, religious beliefs, political persuasion, education, [and] social and property status.
Men and women have equal rights.
Конститутсияи Чумхурии Тоҷикистон [Const.] 1994 rev. 2016, Ch. 2, Art. 17 (Tajikistan).

**United Republic of Tanzania**
The object of this Constitution is to facilitate the building of the United Republic as a nation of equal and free individuals enjoying freedom, justice, fraternity and concord, through the pursuit of the policy of Socialism and Self Reliance which emphasises the application of socialist principles while taking into account the conditions prevailing in the United Republic. Therefore, the state authority and all its agencies are obliged to direct their policies and programmes towards ensuring— […]
g. that the Government and all its agencies provide equal opportunities to all citizens, men and women alike without regard to their colour, tribe, religion, or station in life;
Const. of United Republic of Tanzania, 1997 rev. 2005, Ch. 1, Pt. II, Art. 9 ¶ g.
1. All persons are equal before the law and are entitled, without any discrimination, to protection and equality before the law.
2. No law enacted by any authority in the United Republic shall make any provision that is discriminatory either of itself or in its effect.
5. For the purposes of this Article the expression "discriminate" means to satisfy the needs, rights or other requirements of different persons on the basis of their nationality, tribe, place of origin, political opinion, colour, religion, sex or station in life such that certain categories of people are regarded as weak or inferior and are subjected to restrictions or conditions whereas persons of other categories are treated differently or are accorded opportunities or advantage outside the specified conditions or the prescribed necessary qualifications except that the word "discrimination" shall not be construed in a manner that will prohibit the Government from taking purposeful steps aimed at rectifying disabilities in the society.
Const. of United Republic of Tanzania, 1997 rev. 2005, Ch. 1, Pt. III, § 1, Art. 13, Subarts. 1, 2 & 5.

**Thailand**
Men and women shall enjoy equal rights.
Unjust discrimination against a person on the grounds of differences in origin, race, language, sex, age, disability, physical or health condition, personal status, economic and

social standing, religious belief, education, or political view which is not contrary to the provisions of the Constitution, or on any other grounds shall not be permitted.
รัฐธรรมนูญแห่งราชอาณาจักรไทย [Const.] 2017, Ch. III, § 27 (Thailand).

**Timor-Leste**
No one may be discriminated against on grounds of color, race, marital status, gender, ethnic origin, social or economic status, political or ideological convictions, religion, education or physical or mental condition.
Const. of Democratic Republic of Timor-Leste, 2002, Pt. II, Tit. I, Art. 16 ¶ 2.
Women and men have the same rights and duties in all areas of political, economic, social, cultural and family life.
Const. of Democratic Republic of Timor-Leste, 2002, Pt. II, Tit. I, Art. 17.

**Togo**
The Togolese Republic assures the equality before the law of all citizens without distinction of origin, of race, of sex, of social condition or of religion.
Const. of Republic of Togo, 1992 rev. 2007, Tit. I, Art. 2.
The man and the woman are equal before the law.
Const. of Republic of Togo, 1992 rev. 2007, Tit. II, Sub-tit. I, Art. 11.

**Trinidad and Tobago**
It is hereby recognised and declared that in Trinidad and Tobago there have existed and shall continue to exist without discrimination by reason of race, origin, colour, religion or sex, the following fundamental human rights and freedoms, namely:—
a. the right of the individual to life, liberty, security of the person and enjoyment of property and the right not to be deprived thereof except by due process of law;
b. the right of the individual to equality before the law and the protection of the law;
c. the right of the individual to respect for his private and family life;
d. the right of the individual to equality of treatment from any public authority in the exercise of any functions;
e. the right to join political parties and to express political views;
f. the right of a parent or guardian to provide a school of his own choice for the education of his child or ward;
g. freedom of movement;
h. freedom of conscience and religious belief and observance;
i. freedom of thought and expression;
j. freedom of association and assembly; and
k. freedom of the press.
Const. of Republic of Trinidad & Tobago,1976 rev. 2007, Ch. 1, Pt. 1, § 4.

**Tunisia**
All citizens, male and female, have equal rights and duties, and are equal before the law without any discrimination.
Const. tunisienne de 2014, Tit. 2, Art. 21 (Tunisia).

**Turkey**

All citizens, male and female, have equal rights and duties, and are equal before the law without any discrimination.

Türkiye Cumhuriyeti Anayasası [Const.]1982 rev. 2017, Pt. 1, X, Art. 10 (Turkey).

## Turkmenistan

Turkmenistan shall guarantee the equality of rights and freedoms of a person and a citizen, and also the equality of a person and a citizen before the law regardless of their nationality, skin colour, gender, origin, property and official status, place of residence, language, religion, political beliefs, and other circumstances.

Const. of Turkmenistan, 2008 rev. 2016, § II, Art. 28.

Men and women in Turkmenistan shall have equal rights and freedoms, and equal opportunities for their realization.

Violation of equality on the basis of gender shall be punishable according to the law.

Const. of Turkmenistan, 2008 rev. 2016, § II, Art. 29.

## Tuvalu

Every person in Tuvalu is entitled, whatever his race, place of origin, political opinions, colour, religious beliefs or lack of religious beliefs, or sex, to the following fundamental rights and freedoms:-

a. the right not to be deprived of life (see section 16); and

b. personal liberty (see sections 17 and 18); and

c. security for his person (see sections 18 and 19); and

d. the protection of the law (see section 22); and

e. freedom of belief (see section 23); and

f.  freedom of expression (see section 24); and

g. freedom of assembly and association (see section 25); and

h. protection for the privacy of his home and other property (see section21); and

i.  protection from unjust deprivation of property (see section 20), and to other rights and freedoms set out in this Part or otherwise by law.

Const. of Tuvalu, 1986 rev. 2010, Pt. II, Division 2, § 11, Subsec. 1.

## Uganda

2. Without prejudice to clause (1) of this article, a person shall not be discriminated against on the ground of sex, race, colour, ethnic origin, tribe, birth, creed or religion, or social or economic standing, political opinion or disability.

3. For the purposes of this article, "discriminate" means to give different treatment to different persons attributable only or mainly to their respective descriptions by sex, race, colour, ethnic origin, tribe, birth, creed or religion, or social or economic standing, political opinion or disability.

Const. of Republic of Uganda, 1995 rev. 2017, Ch. 4, Art. 21, Cls. 2 & 3.

1. Women shall be accorded full and equal dignity of the person with men. […]

4. Women shall have the right to equal treatment with men and that right shall include equal opportunities in political, economic and social activities.

Const. of Republic of Uganda, 1995 rev. 2017, Ch. 4, Art. 33, Cls. 1 & 4.

## Ukraine

There shall be no privileges or restrictions based on race, colour of skin, political, religious and other beliefs, sex, ethnic and social origin, property status, place of residence, linguistic or other characteristics.

Equality of the rights of women and men is ensured: by providing women with opportunities equal to those of men, in public and political, and cultural activity, in obtaining education and in professional training, in work and its remuneration; by special measures for the protection of work and health of women; by establishing pension privileges, by creating conditions that allow women to combine work and motherhood; by legal protection, material and moral support of motherhood and childhood, including the provision of paid leaves and other privileges to pregnant women and mothers.

Конституція України [Const.] 1996 rev. 2016, Ch. II, Art. 24 (Ukraine).

**United Kingdom**

The enjoyment of the rights and freedoms set forth in this Convention shall be secured without discrimination on any ground such as sex, race, colour, language, religion, political or other opinion, national or social origin, association with a national minority, property, birth or other status.

Const. of United Kingdom, 1215 rev. 2013, Human Rights Act 1998, Schedules, Schedule 1, Pt. I, Art. 14.

**Uzbekistan**

All citizens of the Republic of Uzbekistan shall have equal rights and freedoms, and shall be equal before law without discrimination by sex, race, nationality, language, religion, social origin, convictions, individual and social status.

Const. of Republic of Uzbekistan, 1992 rev. 2011, Pt. 2, Ch. V, Art. 18.

Women and men shall have equal rights.

Const. of Republic of Uzbekistan, 1992 rev. 2011, Pt. 2, Ch. X, Art. 46.

**Vanuatu**

The Republic of Vanuatu recognises, that, subject to any restrictions imposed by law on non-citizens and holders of dual citizenship who are not indigenous or naturalised citizens, all persons are entitled to the following fundamental rights and freedoms of the individual without discrimination on the grounds of race, place of origin, religious or traditional beliefs, political opinions, language or sex but subject to respect for the rights and freedoms of others and to the legitimate public interest in defence, safety, public order, welfare and health-

a. life;

b. liberty;

c. security of the person;

d. protection of the law;

e. freedom from inhuman treatment and forced labour;

f. freedom of conscience and worship;

g. freedom of expression;

h. freedom of assembly and association;

i. freedom of movement;

j. protection for the privacy of the home and other property and from unjust deprivation of property;

k. equal treatment under the law or administrative action, except that no law shall be inconsistent with this sub-paragraph insofar as it makes provision for the special benefit, welfare, protection or advancement of females, children and young persons, members of under-privileged groups or inhabitants of less developed areas.

Const. of Republic of Vanuatu, 1980 rev. 2013, Ch. 2, Pt. I, Art. 5, Subart. 1.

**Bolivarian Republic of Venezuela**

All persons are equal before the law, and, consequently:

1.No discrimination based on race, sex, creed or social standing shall be permitted, nor, in general, any discrimination with the intent or effect of nullifying or encroaching upon the recognition, enjoyment or exercise, on equal terms, of the rights and liberties of every individual.

Const. de la República Bolivariana de Venezuela, 1999 rev. 2009, Tit. III, Ch. I, Art. 21, 1 (Bolivarian Republic of Venezuela).

The State guarantees the equality and equitable treatment of men and women in the exercise of the right to work. The state recognizes work at home as an economic activity that creates added value and produces social welfare and wealth. Housewives are entitled to Social Security in accordance with law.

Const. de la República Bolivariana de Venezuela, 1999 rev. 2009, Tit. III, Ch. V, Art. 88 (Bolivarian Republic of Venezuela).

**Socialist Republic of Vietnam**

1.Male and female citizens have equal rights in all fields. The State has a policy to guarantee equal gender rights and opportunities.

2.The State, the society, and the family create conditions for women's comprehensive developments and promotion of their role in the society.

3.Sex discrimination is strictly prohibited.

Hiến pháp nước Cộng hòa xã hội chủ nghĩa Việt Nam [Const.] 1992 rev. 2013, Ch. II, Art. 26, Cls. 1 & 2 & 3 (Socialist Republic of Vietnam).

**Zambia**

It is recognised and declared that every person in Zambia has been and shall continue to be entitled to the fundamental rights and freedoms of the individual, that is to say, the right, whatever his race, place of origin, political opinions, colour, creed, sex or marital status, but subject to the limitations contained in this Part, to each and all of the following, namely:

a. life, liberty, security of the person and the protection of the law;

b. freedom of conscience, expression, assembly, movement and association;

c. protection of young persons from exploitation;

d. protection for the privacy of his home and other property and from deprivation of property without compensation; and the provisions of this Part shall have effect for the purpose of affording protection to those rights and freedoms subject to such limitations

designed to ensure that the enjoyment of the said rights and freedoms by any individual does not prejudice the rights and freedoms of others or the public interest.
Const. of Republic of Zambia, 1991 rev. 2016, Pt. III, Art. 11.
1. Subject to clauses (4), (5) and (7), no law shall make any provision that is discriminatory either of itself or in its effect.
2. Subject to clauses (6), (7) and (8), no person shall be treated in a discriminatory manner by any person acting by virtue of any written law or in the performance of the functions of any public office or any public authority.
3. In this Article the expression "discriminatory" mean, affording different treatment to different persons attributable, wholly or mainly to their respective descriptions by race, tribe, sex, place of origin, marital status, political opinions colour or creed whereby persons of one such description are subjected to disabilities or restrictions to which persons of another such description are not made subject or are accorded privileges or advantages which are not accorded to persons of another such description.
Const. of Republic of Zambia, 1991 rev. 2016, Pt. III, Art. 23, Cls. 1, 2 & 3.

## Zimbabwe

1. Zimbabwe is founded on respect for the following values and principles-- […]
g. gender equality;
Const. of Zimbabwe, 2013 rev. 2017, Ch. 1, § 3, Subsec. 1 ¶ g.
1. The State must promote full gender balance in Zimbabwean society, and in particular—
a. the State must promote the full participation of women in all spheres of Zimbabwean society on the basis of equality with men;
b. the State must take all measures, including legislative measures, needed to ensure that—
i. both genders are equally represented in all institutions and agencies of government at every level; and
ii. women constitute at least half the membership of all Commissions and other elective and appointed governmental bodies established by or under this Constitution or any Act of Parliament;
c. the State and all institutions and agencies of government at every level must take practical measures to ensure that women have access to resources, including land, on the basis of equality with men.
2. The State must take positive measures to rectify gender discrimination and imbalances resulting from past practices and policies.
Const. of Zimbabwe, 2013 rev. 2017, Ch. 2, § 17, Subsecs. 1 & 2.
1. All persons are equal before the law and have the right to equal protection and benefit of the law.
2. Women and men have the right to equal treatment, including the right to equal opportunities in political, economic, cultural and social spheres.
3. Every person has the right not to be treated in an unfairly discriminatory manner on such grounds as their nationality, race, colour, tribe, place of birth, ethnic or social origin, language, class, religious belief, political affiliation, opinion, custom, culture, sex, gender, marital status, age, pregnancy, disability or economic or social status, or whether they were born in or out of wedlock.
Const. of Zimbabwe, 2013 rev. 2017, Ch. 4, Pt. 2, § 56, Subsecs. 1, 2 & 3.

1. Every woman has full and equal dignity of the person with men and this includes equal opportunities in political, economic and social activities.

2. Women have the same rights as men regarding the custody and guardianship of children, but an Act of Parliament may regulate how those rights are to be exercised.

3. All laws, customs, traditions and cultural practices that infringe the rights of women conferred by this Constitution are void to the extent of the infringement.

Const. of Zimbabwe, 2013 rev. 2017, Ch. 4, Pt. 3, § 80, Subsecs. 1, 2 & 3.